# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **APPRAISAL MANAGEMENT COMPANY III, LLC dba AMCO,** | ) ) ) | **CASE NO. 1:04 CV 1158** |
| Plaintiff, | ) ) | **JUDGE NUGENT** |
| v. | ) ) | |
| **FNC, INC.,** | ) ) | |
| Defendant. | ) | |

## FNC'S POST-HEARING MEMORANDUM
## IN SUPPORT OF MOTION FOR DISMISSAL SANCTIONS

At the conclusion of the July 19, 2005 sanctions hearing, the Court partially granted FNC's motion for dismissal sanctions, finding that AMCO has failed to comply with the Court's discovery orders and that such failure has prejudiced FNC. (Minutes of Proceedings, Dkt. 79.) The Court requested further briefing on the scope of sanctions to be imposed for AMCO's misconduct. (*Id.*)

The law of the Sixth Circuit is clear: AMCO's engagement in over one year of dilatory and contumacious conduct and its willful violation of at least five separate discovery orders warrants the dismissal with prejudice of AMCO's lawsuit.

### PROCEDURAL BACKGROUND

The facts relevant to FNC's motion for dismissal sanctions have been fully set forth in FNC's supporting and reply memoranda. (Dkts. 21 and 54.) AMCO's numerous discovery abuses over the past year and their prejudicial impact on FNC have been detailed in those briefs and at oral argument.

Even as of the July 19, 2005 sanctions hearing, AMCO had failed to cure many of the discovery deficiencies it had been repeatedly ordered to redress.[1]  For the reasons stated in FNC's motion, supporting memoranda and at oral argument, which are summarized in part below, the Court should grant FNC's motion in full, and should adopt FNC's proposed Findings of Fact and Conclusions of Law dismissing AMCO's lawsuit with prejudice.

## LAW AND ARGUMENT

### A. The Civil Rules and Sixth Circuit Law Provide for Dismissal as a Sanction for Egregious Discovery Abuses.

The law in this Circuit is clear that parties who refuse to obey orders of the court and choose to continually abuse the discovery process subject their claims to dismissal.  Civil Rule 37(b)(2)(C) provides that where a party "fails to obey an order to provide or permit discovery, including an order [granting a motion to compel under Civil Rule 37(a)] . . . the court in which the action is pending may . . . [enter] an Order . . . dismissing the action or proceeding or any part thereof, or rendering judgment by default against the disobedient party."  The same sanction is provided for in Civil Rules 41(b) and 37(d).

The sanction of dismissal is routinely applied by courts in the Sixth Circuit against wilfully non-compliant parties.  For example, in *Southern Wabash Communications, LTD v. Union County Broadcasting Co., Inc.*, 69 Fed. Appx. 285, 290-92 (6th Cir. 2003), the court affirmed the dismissal of plaintiff's action under Civil Rules 37 and 41 because plaintiff had

---

[1] As of the July 19, 2005 sanctions hearing AMCO had still failed to provide:  (a) additional agreements between AMCO and FNC; (b) communications between AMCO and Bank of America regarding the development of, and rights in, eValu; (c) additional agreements between AMCO and Bank of America; (d) the eValu computer code; (e) emails and other documents related to the interface project and AMCO's interactions with FNC; (f) the technical documents in Ms. Nallasamy's files; (g) the provisional patent application for eValu; (h) the calculation behind AMCO's stated damages of $10.75 million; (i) confidentiality agreements executed by AMCO's employees; (j) unredacted versions of documents previously produced with improper redactions; (k) a privilege log; (l) written responses to FNC's second set of requests for production; and (m) verifications of AMCO's interrogatory responses.

AMCO produced a small set of additional documents, a privilege log and a verification on the afternoon of July 19, 2005.  However, these documents did not cure most of the above remaining deficiencies.  In any case, the documents came far too late to ameliorate the prejudice already visited upon FNC.

failed to comply with a scheduling order and did not timely conduct discovery.  Similarly in *U.S. v. Reyes*, 307 F.3d 451, 456-58 (6th Cir. 2002), the court affirmed the dismissal of plaintiff's action under Civil Rule 37(d) because plaintiff failed to provide discovery responses.  Although there was no prior court order compelling those responses, the Sixth Circuit found that the district court did not abuse its discretion in dismissing plaintiff's action because plaintiff had the ability to comply with its discovery obligations but did not do so over a period of six months, despite several amicable requests from the defendant.  *See id*.  Additionally, in *Harmon v. CSX Transportation, Inc.*, 110 F.3d 364, 368-69 (6th Cir. 1997), the Court affirmed the dismissal of plaintiff's action under Civil Rules 37 and 41 because plaintiff failed to provide full and complete discovery responses, failed to oppose a motion to compel and then failed to comply with a court order granting the motion to compel.  Plaintiff's complaint was dismissed with prejudice after plaintiff missed the deadline for compliance with the order granting defendant's motion to compel by eighteen days.  *See id.*, at 366.

Numerous other Sixth Circuit decisions have upheld the imposition of dismissal sanctions for various types of discovery abuses.  *See e.g.*, *Moses v. Sterling Commerce (America), Inc.*, 122 Fed. Appx. 177, 180 (6th Cir. 2005) ("continued refusal to fully comply with the Court's discovery orders" by failing to "produce all the documents requested by [defendant] or respond completely to [defendant's] interrogatories"); *Wittman v. Wilson*, 95 Fed. Appx. 752, 754 (6th Cir. 2004) (failure to cooperate in discovery); *Sexton v. Uniroyal Chemical Co., Inc.*, 62 Fed. Appx. 615, 620 (6th Cir. 2003) (failure to comply with Rule 26(a) discovery order); *Bullard v. Roadway Express*, 3 Fed. Appx. 418 (6th Cir. 2001) (failure to provide initial discovery followed by failure to comply with discovery orders); *Bass v. Jostens, Inc.*, 71 F.3d 237, 239-40 (6th Cir. 1995) (failure to comply with interrogatories, requests for production and four subsequent discovery orders requiring compliance); *Regional Refuse Systems, Inc. v. Inland Reclamation*

*Co.*, 842 F.2d 150, 155 (6th Cir. 1988) (improper conduct during deposition, including "refusing to answer questions," and "claiming vague and spurious privileges").

Moreover, the sanction of dismissal is universally recognized and affirmed where appropriate by the other circuit courts. *See e.g.*, *James Industries, Inc. v. Lexar Corp.*, 60 Fed. Appx. 385 (3rd Cir. 2003); *Hicks v. Feeney*, 850 F.2d 152 (3rd Cir. 1988); *In re: Golant*, 239 F.3d 931 (7th Cir. 2001); *Anheuser-Busch, Inc. v. Natural Beverage Dist.*, 69 F.3d 337 (9th Cir. 1995); *Wexell v. Komar Industries, Inc.*, 18 F.3d 916 (Fed. Cir. 1994); *Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849 (2nd Cir. 1995); *Independent Investor Protective League v. Touche Ross & Co.*, 607 F.2d 530 (2nd Cir. 1978); *Omaha Indian Tribe v. American Telephone & Telegraph Co.*, 933 F.2d 1462 (8th Cir. 1991).

### B. Dismissal of AMCO's Claims is Warranted.

In reviewing whether the grant of a dismissal sanction is appropriate under an abuse of discretion standard, the Sixth Circuit requires examination of four factors:

> (1) whether the party's failure is due to willfulness, bad faith, *or* fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed *or* considered before dismissal was ordered.

*Southern Wabash Communications, Ltd.*, 69 Fed. Appx. at 290 (citing *Reyes*, 307 F.3d 451, 458) (emphasis added). Each of these factors indicates that AMCO's claims should be dismissed.

#### 1. AMCO has Willfully Defied its Discovery Obligations and the Court's Orders.

Willfulness, bad faith or fault are established where the noncompliant party fails to respond to amicable requests, fails to respond to motions to compel and fails to comply with orders granting motions to compel. *See Harmon*, 110 F.3d at 368. They are <u>presumed</u> where "the party has the ability to comply with a discovery order but does not." *Reyes*, 307 F.3d at 458; *Southern Wabash Communications, Ltd.*, 69 Fed. Appx. at 290. In such cases, "a district

4

court does not abuse its discretion in dismissing a case." *Southern Wabash Communications, Ltd.*, 69 Fed. Appx. at 290.

It is not enough for a party merely to pretend to comply or to promise compliance with discovery orders in order to avoid a finding of willfulness or bad faith. "Misconduct is not any less misconduct because it is executed with a veneer of good intentions." *Regional Refuse Systems, Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 156 (6th Cir. 1988) (noting that party whose case was dismissed "made a colorable effort to seem to be acting in good faith while in fact consistently refusing to supply relevant and unprivileged information").

In this case, AMCO's conduct clearly has been willful and in bad faith, because, among other things, AMCO has ignored repeated amicable requests for compliance from FNC, has failed to oppose both of FNC's motions to compel, and has failed to comply with at least five discovery orders. AMCO has admitted willful noncompliance with those parts of the Court's Orders with which it "disagrees," and clearly has had the ability to comply in full with all orders but has not done so.

        **a.**       **AMCO <u>Admitted</u> that it <u>Willfully</u> Failed to Comply with the Court's Orders Requiring Production of its eValu Patent Application File.**

There can be no question that AMCO's discovery misconduct has been willful. AMCO has admitted as much with respect to the disclosure of its eValu patent application file. FNC initially requested these documents from AMCO on September 23, 2004, and the Court initially ordered AMCO to produce them on December 17, 2004. Additional orders requiring production were issued on March 18, 2005, April 7 2005 and twice on April 11, 2005. In response, AMCO repeatedly asserted that it "respectfully disagrees" with the Court's Orders requiring production of its patent application file. (*See e.g.*, Dkt. 49 at 7.) Moreover, AMCO instructed its corporate representative not to answer patent-related deposition questions on grounds of "relevance" – a

5

frivolous position in light of AMCO's trade secret claims – and then compounded its misconduct by doing so <u>again</u> at the remedial deposition of the same witness, *after the Court granted a motion to compel aimed specifically at that information*.

It is no excuse for AMCO to now claim that it eventually chose to produce *part* of the requested documents, in *partial* compliance with the Court's Orders. That compliance came on June 17, 2005, nine months after FNC's initial request, when less than two weeks of discovery remained. AMCO's belated production only proves one thing: that AMCO had the ability to comply with FNC's requests and the Court's Orders, but chose instead to defy them. AMCO's conduct was undeniably willful. *See, e.g.*, *Moses v. Sterling Commerce (America), Inc.*, 122 Fed. Appx. 177, 182-183 (6th Cir. 2005) (finding willfulness and bad faith where "there was no valid reason for [plaintiff] not to provide the information requested after being ordered to do so by the Court").

        b.        **Deposition Testimony of AMCO's Witnesses Indicates that AMCO Could Have Timely Complied with the Court's Orders but Did Not.**

AMCO clearly had the ability to timely comply with each of the Court's five discovery orders, but did not. Its deposition witnesses admitted that documents requested months ago by FNC exist within AMCO's possession but were never produced. For example:

- Pat Moore, AMCO's first Rule 30(b)(6) designee, testified on February 11, 2005 that AMCO had in its possession highly relevant communications and agreements that had never been produced. (Moore Dep., Feb. 11, 2005, pp. 114, 138-144) (App. at Tab 1)[2]. AMCO's counsel agreed in subsequent communications that these

---

[2] Pursuant to the Court's Stipulated Protective Order, the Appendix to FNC's Post-Hearing Memorandum in Support of Motion for Dismissal Sanctions is being filed separately, under seal. References to documents cited in the appendix shall be to the tab number in the form "App. Tab __."

6

documents existed, and promised to produce them. (M. Houston email to H. Mihet, Feb. 15, 2005, App. at Tab 2.)

- At the continuation of his deposition nearly three months later, Mr. Moore testified that he had made virtually no efforts to locate the documents he previously identified as outstanding. (Moore Dep., May 6, 2005, pp. 168-171, App. at Tab 3.) AMCO's counsel indicated again on the record that the documents in question "are available," and again promised that he would produce them. (*Id*. at pp. 171-173.) To date, these documents remain in AMCO's control but have not been produced.

- On May 9, 2005, more than seven months after FNC's initial request and with all five discovery Orders on the docket, AMCO's second Rule 30(b)(6) designee, Tim McParland, identified additional key documents that existed but had not been produced. (McParland Dep., May 9, 2005, pp. 27-37, App. at Tab 4). Mr. McParland indicated that he had collected all of these documents and provided them to AMCO's counsel for purposes of this litigation "within the past six months" prior to his deposition. (*Id*., at 37.) AMCO's counsel however, admitted on the record that the documents had not been produced but promised to produce them. (*Id*., at 188.) AMCO ultimately did produce some of these documents, but only on July 1, 2005, the day discovery closed.

- On June 30, 2005, Jothi Nallasamy, another AMCO employee, also identified responsive documents in AMCO's possession that should have been produced nine months earlier. She testified that AMCO had in its possession a hard copy file containing her notes and technical documents concerning the joint project between AMCO and FNC that AMCO claims to have been the setting for FNC's alleged misappropriation. (Nallasamy Dep., June 30, 2005, pp. 87-89, App. at Tab 5.)

7

Although she was identified by AMCO as the person principally responsible for the technical aspects of that project, Ms. Nallasamy testified that she was never asked to turn over this file to AMCO's counsel for purposes of this litigation. (Id., at 91.) In addition, Ms. Nallasamy confirmed that she could print in hard copy the computer code behind the eValu product – another item that FNC had specifically requested nine months earlier – yet she was never asked to, and did not, perform this task. (Id., at 73-75.) The documents identified by Ms. Nallasamy were not produced by AMCO prior to the July 1, 2005 discovery cut-off or the July 19, 2005 sanctions hearing.

- Finally, AMCO's patent counsel testified at his deposition on July 1, 2005 that additional patent documents existed that were not included in the June 17 production of the patent file. Specifically, Mr. Bell testified that AMCO had filed an earlier provisional patent application for eValu, and that a different law firm had been engaged to accomplish that task. (Bell Dep., July 1, 2005, p. 14, App. at Tab 6.) During the sanctions hearing on July 19, 2005, AMCO's counsel confirmed that additional patent documents existed but had not been produced despite two court orders that had been issued several months prior. (Transcript of July 19, 2005 Sanctions Hearing, pp. 39-40, App. at Tab 7.)

   c. **Documents Eventually Produced by AMCO on the Last Day of Discovery Show that AMCO Could Have Timely Produced Them, but Did Not.**

The documents AMCO chose to produce on July 1, 2005, the last day of discovery, tell the same story of willful misconduct. These documents contain critical, highly relevant information that FNC had requested over nine months earlier and that AMCO had been ordered to provide, including: technical documents related to the interface project between FNC, AMCO

8

and Bank of America, eValu development and technical documents, including the documents identified by Mr. McParland at his deposition, and documents concerning Bank of America and the Appraisal Institute, third parties related to AMCO's and FNC's respective claims of tortious interference. (AMCO Document Production, July 1, 2005, App. at Tab 8.)

AMCO's production included clearly labeled file folders and communications referring to company-maintained files relating to issues that were specifically identified in FNC's discovery requests. For example, one document appears to be the title page of a chronological file and is clearly labeled "BOA FNC INTERFACE." (AMCO 002337, App. at Tab 8.) Also, AMCO's key employees created chronological files related to AMCO's relationship with FNC (AMCO 002338, App. at Tab 8), and referred frequently to them. (AMCO 002350, App. at Tab 8.) It defies any reason or logic for AMCO to now claim that it did not know that these files existed in its possession or that it could not timely produce them, especially as to documents that, according to deposition testimony, had been provided to AMCO's counsel specifically for purposes of this litigation. (McParland Dep., May 9, 2005, p. 37, App. at Tab 4).

The record is thus clear: AMCO has had knowing possession of thousands of pages of critical documents which *it could have produced* last September, when FNC requested them, let alone after each of the subsequent Court Orders requiring their production. AMCO's failure to do so is therefore presumed to be willful, and AMCO has not – and cannot – overcome that presumption. *See Reyes*, 307 F.3d at 458; *Southern Wabash Communications, Ltd.*, 69 Fed. Appx. at 290.

> **2. AMCO's Conduct has Caused Prejudice to FNC.**
>
> **a. FNC Was Deprived of Critical Information During the Depositions It Conducted in this Litigation.**

The Court has already held that AMCO's conduct has prejudiced FNC in one important aspect: it has deprived FNC of thousands of critical documents needed to adequately depose the

9

nine witnesses whose depositions FNC took in this action.  (Minutes of Proceedings, Dkt. 79.) This finding is well supported, since eight of the nine depositions were taken prior to AMCO's belated production of crucial documents on July 1, 2005, the day discovery closed.  FNC did not have the benefit of those documents AMCO eventually produced, nor did it have the benefit of the additional documents that AMCO has admitted to having but has failed to produce even now.

### b. FNC Has Been Unable to Complete Discovery Within the Deadlines Established by the Court.

Unfortunately, the prejudice AMCO has visited upon FNC is not limited to past depositions.  Because AMCO did not provide much of the information and documents requested by FNC at all, and provided some of it only on the last day of discovery, FNC has been unable to complete its discovery within the time frame set by the Court.  Aside from the incomplete status of the depositions already taken, AMCO's belated document production revealed several individuals with critical relevant knowledge that were not previously identified.  Because discovery has now closed, FNC will not be able to depose those individuals and determine the extent and scope of their knowledge.

The Sixth Circuit held in *Reyes* that the inability of a party to complete its discovery within the time frame scheduled by the Court caused by an adversary's delay in production of documents and information constitutes sufficient prejudice to warrant dismissal.  307 F.3d at 458 ("The United States suffered prejudice in that it could not comply with the district court's September 15, 2000 discovery deadline.  Without answers to document requests, the Government could not schedule depositions or other discovery").

### c. FNC Has Been Commercially Harmed.

In addition, because of AMCO's delay for over one year, FNC has been unable to move the critical issue of ownership of its ValueSource product towards adjudication.  In that time, while resisting at all costs FNC's attempts to shed light on AMCO's doubtful allegations, AMCO

10

has had no trouble trumpeting its claims in the marketplace.  AMCO has issued press releases and has made extra-judicial statements about its lawsuit.  (*See e.g.*, "AMCO Puts FNC, Inc. on Notice," *AMCO Press Release*; "AMCO sues FNC and ex-AMCO employee over ownership and concept of eValu," *Appraisal Intelligence*, August 16, 2004; "Lawsuit Looks at Who Owns eValu," *Mortgage Technology*, August 6, 2004) (attached as Exhibit A to FNC's Motion for Dismissal Sanctions, Dkt. 21.)

As a result, FNC's commercial interests have been severely harmed.  One potential ValueSource client, the Appraisal Institute, has testified that it has put its decision to purchase ValueSource on hold directly as a result of the pendency of AMCO's lawsuit.  (Ross Dep., June 22, 2005, pp. 55-58, App. at Tab 9.)  FNC has not yet ascertained the exact amount of its damages, however, given the Appraisal Institute's membership of at least 18,000 individuals (*id.*, at 8), FNC's loss of business will exceed seven figures.  Had AMCO timely provided the information and documents FNC requested in September 2004, by now FNC could have exposed the meritless nature of AMCO's allegations, allowing it to resume business with the Appraisal Institute and other potential clients.

In short, AMCO has sought to maximize any commercial advantage it can gain through publicizing its trade secret claims against a competitor, while simultaneously refusing to comply with discovery obligations that would expose those claims as baseless.  Such conduct causes prejudice that warrants dismissal.  *See e.g.*, *Southern Wabash Communications, Ltd.*, 69 Fed. Appx. at 291 (holding that delay in resolving questions regarding ownership of product in suit caused sufficient prejudice to warrant dismissal).

### d. FNC Has Incurred Unnecessary Legal Fees and Expenses.

Finally, since AMCO filed this lawsuit over one year ago, AMCO's persistent resistance to FNC's discovery efforts and its long time defiance of five Court Orders have caused FNC to

11

incur tens of thousands of dollars in attorneys' fees and expenses. In addition to countless letters, emails, phone calls and discovery conferences, FNC has had to file no fewer than ten briefs in its attempt to pry from AMCO the information that AMCO has so jealously guarded over and above the Court's repeated demands of full disclosure. AMCO has never articulated a single valid reason for failing to produce all relevant documents and information in response to FNC's legitimate requests in September 2004, much less a year later and in the face of at least five Court Orders.

Delay and unnecessary legal expenses caused by an adversary's contumacious discovery conduct constitutes prejudice of a degree that warrants dismissal:

> *We have no doubt* that [defendant] was prejudiced by [plaintiff]'s failure to respond to its interrogatories. Not only had [defendant] been unable to secure the information requested, but it was also required to waste time, money and effort in pursuit of cooperation which [plaintiff] was legally obligated to provide.

*Harmon*, 110 F.3d at 368 (emphasis added).

In *Moses*, the Sixth Circuit affirmed the dismissal of plaintiff's action based in part on the prejudice caused by plaintiff's refusal to provide discovery, which consisted of "both time and money" spent on "two motions to compel and two motions to dismiss" as well as "numerous letters trying to obtain this information." 122 Fed. Appx. 177, 183. FNC has clearly had to do much more to pry the relevant information and documents away from AMCO.

Thus, there can be no question that FNC has been severely prejudiced by AMCO's willful and bad faith discovery conduct, and the Court was justified in so finding.

### 3. AMCO Has Been Warned.

Although courts generally require "some notice" to the intransigent party that its conduct could lead to dismissal, there is no requirement that a specific warning be issued from the Court. In *Southern Wabash Communications* the Sixth Circuit affirmed a dismissal even though the district court had never warned plaintiff directly. 69 Fed. Appx. at 291. In so doing, the Court

12

held that sufficient warning was provided by the motion for sanctions itself.  Similarly in *Reyes* the Sixth Circuit held that a warning letter from the party seeking dismissal coupled with a motion to strike provides sufficient notice to the noncompliant party that a dismissal is possible. 307 F.3d at 458.  In *Harmon*, the Sixth Circuit was satisfied with the warning provided solely by the act of filing a motion for dismissal sanctions.  110 F.3d at 368 ("There can be no argument that [plaintiff] was without notice that the district court was contemplating the dismissal of his complaint.  [Defendant] had filed a motion to dismiss and [plaintiff] had requested additional time to respond").  And in *Sexton v. Uniroyal Chemical Co., Inc.*, 62 Fed. Appx. 615, 620 (6th Cir. 2003), the Court held that even a motion that does not expressly seek dismissal sanctions but the granting of which would be tantamount to dismissal provides sufficient notice to the recalcitrant party.

Viewed against this standard, there can be no doubt that AMCO has been sufficiently warned.  AMCO has received repeated warnings from FNC that its continued refusal to cooperate in discovery or to comply with the Court's Orders may result in dismissal of its action. For example, FNC initially warned AMCO on December 21, 2004, following the granting of FNC's initial motion to compel.  (*See* Exhibit B to FNC's Motion for Dismissal Sanctions, Dkt. 21.)  When AMCO failed to cure the deficiencies in its discovery responses and production by the December 31, 2004 deadline imposed by the Court, FNC issued two additional warnings on January 6, 2005.  (*See* Exhibits F and H to FNC's Motion for Dismissal Sanctions, Dkt. 21.)

Thereafter, the filing of FNC's Motion for Dismissal Sanctions (dkt. 21) on February 1, 2005, put AMCO on notice that FNC would insist on AMCO's full compliance with Court Orders at the risk of dismissal.  Similarly, FNC's Motion for Contempt Sanctions against AMCO and its patent counsel (dkt. 55) filed on May 17, 2005 also should have put AMCO on notice that its continued misconduct would lead to dismissal.  With each of the briefs it filed in opposition to

13

FNC's motions, AMCO could have focused its efforts on a full production rather than to stubbornly represent to the Court that it has complied with those aspects of the Court's Orders with which it agreed and that it need not comply with the aspects with which it disagreed. AMCO, however, chose not to avail itself of those opportunities.

Clearly, given its year-long history of willful non-compliance in spite of repeated warnings, AMCO cannot claim surprise now if the Court imposes the sanction of dismissal.

### 4. The Court Has Previously Considered and Even Imposed Less Drastic Sanctions, which AMCO Has Ignored.

The requirement that courts consider lesser sanctions is lessened or even eliminated where, as here, there is a clear record of willful discovery misconduct.  In *Harmon*, the Sixth Circuit held that the district court did not abuse its discretion by not articulating its consideration of lesser sanctions, because the clear record of discovery misconduct permitted dismissal even "as the first and only sanction."  110 F.3d at 368 ("We are loathe to require the district court to incant a litany of the available lesser sanctions").  Thus, this factor becomes significant only "in the absence of contumacious conduct." *Id*.

Nevertheless, although there is a long and clear record of AMCO's discovery abuses in this case, less drastic sanctions have not only been considered but were also imposed by the Court, without the desired effect of deterring and remedying AMCO's conduct.  FNC has already sought and obtained relief from the Court through two motions to compel, both of which were granted and both of which awarded FNC its attorneys' fees and expenses.  Clearly, that relief, obtained on December 17, 2004 (dkt. 18) and April 7, 2005 (dkt. 41), was ineffective in securing AMCO's full compliance with its discovery obligations.

AMCO has failed to comply with at least five discovery orders requiring full disclosure. Additional orders compelling AMCO to produce responsive documents and information are likely to be met with the same response:  indifference – if not open contempt – or, in the best

14

case scenario, a continued trickling of information when and how AMCO unilaterally decides to disclose it.  Moreover, since discovery has already closed, such orders will be of limited value now, even in the unlikely event that AMCO chooses to comply fully with them.  FNC has already been deprived of critical information necessary for its defense, and will be unable to probe and investigate through discovery any additional information that AMCO chooses to provide.

As such, the appropriate sanction for AMCO's willful and prejudicial discovery abuses is dismissal.

## CONCLUSION

For the foregoing reasons, FNC respectfully requests that the Court adopt its proposed Findings of Fact and Conclusions of law and enter on Order dismissing AMCO's Complaint with prejudice.

Respectfully submitted,

/s/ Horatio G. Mihet
Robert F. Ware (0055515)
   *Robert.Ware@ThompsonHine.com*
Horatio G. Mihet (0075518)
   *Harry.Mihet@ThompsonHine.com*
**THOMPSON HINE LLP**
3900 Key Center, 127 Public Square
Cleveland, Ohio 44114-1291
(216) 566-5500 – Phone
(216) 566-5800 – Fax

Attorneys for Defendant FNC, Inc.

**CERTIFICATE OF SERVICE**

The foregoing *Defendant FNC, Inc.'s Post-Hearing Memorandum in Support of Its Motion for Sanctions* was filed electronically with the Court this 29th day of July 2005.  Service will be made upon all parties of record via the Court's electronic notification system.

/s/ Horatio G. Mihet
Attorney for Defendant FNC, Inc.
