# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| APPRAISAL MANAGEMENT | ) | CASE NO. 1:04 CV 1158 |
| COMPANY III, LLC dba AMCO, | ) | |
| | ) | |
| Plaintiff, | ) | JUDGE NUGENT |
| v. | ) | |
| | ) | |
| FNC, INC., | ) | |
| Defendant. | ) | |

## NOTICE OF FILING OF PROPOSED
## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Please take notice that, pursuant to the Court's Order of July 19, 2005, defendant FNC, Inc. has filed the attached proposed Findings of Fact and Conclusions of Law electronically on July 29, 2005.  Service will be made upon all attorneys of record by the Court's electronic filing system.

/s/ Horatio G. Mihet
Robert F. Ware (0055515)
  *Robert.Ware@ThompsonHine.com*
Horatio G. Mihet (0075518)
  *Harry.Mihet@ThompsonHine.com*
**THOMPSON HINE LLP**
3900 Key Center, 127 Public Square
Cleveland, Ohio 44114-1291
(216) 566-5500 – Phone
(216) 566-5800 – Fax

Attorneys for Defendant FNC, Inc.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **APPRAISAL MANAGEMENT** | ) | **CASE NO. 1:04 CV 1158** |
| **COMPANY III, LLC dba AMCO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **JUDGE NUGENT** |
| **v.** | ) | |
| | ) | |
| **FNC, INC.,** | ) | |
| **Defendant.** | ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

WHEREAS, on February 1, 2005, defendant FNC, Inc. ("FNC") filed a motion for

dismissal sanctions (dkt. 21), which was opposed by plaintiff Appraisal Management Company

III, LLC ("AMCO") on May 6, 2005 (dkt. 49), and replied to by FNC on May17, 2004 (dkt. 54);

WHEREAS, the Court held an evidentiary hearing and heard oral arguments on FNC's

motion on July 19, 2005, at which time the Court partially granted the motion and solicited

additional briefing on the nature of the sanctions to be imposed against AMCO; and

WHEREAS, the parties submitted additional briefs on the sanctions to be imposed

against AMCO;

NOW, THEREFORE, the Court, having considered the evidence, briefs and arguments

submitted by the parties, and being fully advised of the premises for FNC's motion, hereby enters

the following findings of fact and conclusions of law:

## FINDINGS OF FACT

**A.      The Parties' Claims.**

1.      Appraisal Management Company III, LLC ("AMCO") filed this action against FNC, Inc. ("FNC") on June 17, 2004, alleging that FNC breached a non-disclosure agreement, misappropriated AMCO's trade secrets and tortiously interfered with AMCO's business relationships.  (Dkt. 1.)

2.      The parties' dispute arises out of two property valuation products they market to the mortgage lending industry – AMCO's eValu and FNC's ValueSource.  The crux of AMCO's allegations is that FNC used AMCO's confidential information and trade secrets to develop ValueSource to compete with eValu.  (*Id*.)  AMCO's Complaint seeks damages in excess of ten million dollars.  (*Id*.)

3.      FNC has denied all material allegations.  (Dkt. 3.)  FNC has also filed a Counterclaim, alleging that AMCO has improperly publicized the lawsuit and the allegations in AMCO's Complaint, which FNC contends are false and defamatory.  (Dkt. 10.)

**B.      FNC's Written Discovery Requests.**

4.      On September 23, 2004, the Court held a Case Management Conference and instructed the parties to begin discovery, setting the discovery cut-off for January 31, 2005. (Dkt. 9.)  AMCO's counsel failed to appear at this conference.  (*Id*.)

5.      On September 23, 2004, FNC served its First Set of Interrogatories and Requests for Production on AMCO, which among other things asked AMCO to specifically identify the alleged trade secrets in suit, the circumstances of the alleged disclosure of such information to FNC and the specifics of FNC's alleged misappropriation.  FNC also sought information regarding the development of eValu,  AMCO's efforts to obtain a patent for its purported

invention, and AMCO's alleged damages.  AMCO's written responses and objections to FNC's

First Set of Interrogatories and Requests for Production were due on October 25, 2004.

      6.      On October 20, 2004, FNC served its Second Set of Interrogatories and Requests

for Production on AMCO, which requested information about AMCO's extra-judicial statements

and communications with FNC's existing and potential customers.  AMCO's written responses

and objections to FNC's Second Set of Interrogatories and Requests for Production were due on

November 20, 2004.

      7.      On November 30, 2004, the Court entered a Stipulated Protective Order to allow

the parties to exchange confidential information for purposes of this litigation only.  (Dkts. 13

and 14.)  AMCO and FNC negotiated the terms of the Order and jointly moved the Court to

adopt it.  (Dkt. 12.)

      8.      On December 20, 2004, FNC properly served a subpoena upon Howrey Simon

Arnold & White LLP ("Howrey"), AMCO's patent counsel, seeking among other things

documents related to AMCO's patent application for eValu.

      **C.**      **AMCO's Initial Failure to Provide Discovery.**

      9.      AMCO did not respond timely to either set of FNC's discovery requests, nor did

it seek an extension of time in which to do so.  Despite repeated attempts by FNC to secure

AMCO's compliance, by December 1, 2004 AMCO had (a) failed to serve written responses to

FNC's First Set of Requests for Production,  (b) failed to serve written responses to FNC's

Second Set of Interrogatories and Requests for Production, (c) provided only three documents in

response to FNC's numerous document requests, and (d) provided no response to several of

FNC's First Set of Interrogatories, and provided incomplete, vague and evasive responses to most

of the others.

10.     FNC filed a motion to compel on December 3, 2004.  (Dkt. 16.)  AMCO failed to timely oppose FNC's motion or to seek an extension of time in which to do so.  FNC's motion was thereafter granted in full on December 17, 2004, and AMCO was ordered to correct each of the numerous deficiencies outlined in FNC's Motion and to reimburse FNC for the costs and fees associated with its motion by December 31, 2004.  (Dkt. 18.)

D.     **AMCO's Noncompliance With the December 17, 2004 Discovery Order.**

11.     AMCO failed to comply with the Court's December 17, 2004 discovery Order, providing no additional responses or documents by the December 31, 2004 deadline.

12.     On January 5 and January 10, 2005, AMCO provided supplemental written discovery responses and a limited set of documents to FNC, but this production was insufficient to cure the majority of the deficiencies AMCO had been ordered to redress.

13.     In a January 6, 2005 letter, FNC identified AMCO's numerous outstanding discovery deficiencies.  FNC's letter outlined 27 categories of information that the Court had ordered AMCO to provide and that AMCO had failed to provide as of that date.  FNC again requested AMCO's full compliance with the Court's Order and warned AMCO that, barring such full compliance immediately, FNC would seek dismissal of AMCO's lawsuit.

14.     On January 7, 2005, the Court held a status conference.  AMCO's counsel again failed to appear in person, but the Court was able to locate him and allowed him to participate via telephone.  Given the incomplete status of discovery caused by AMCO's delays, the Court extended the fact discovery deadline to April 1, 2005.  (Dkt. 20.)

15.     FNC made additional inquiries to AMCO on January 18 and 19, 2005, seeking compliance with the Court's December 17, 2004 Order, but AMCO failed to produce any additional information or documents.

16.     On February 1, 2005, FNC filed a motion for dismissal sanctions.  (Dkt. 21.)
FNC's motion outlined six categories of deficiencies that AMCO had failed to rectify as ordered
and requested that the Court dismiss AMCO's complaint as a sanction for AMCO's discovery
abuses.  (*Id.*)

E.     **AMCO's Intervening Discovery Motions.**

17.     Initially, AMCO neither opposed FNC's motion for sanctions nor provided
additional discovery.  Instead, AMCO filed a series of intervening motions.

18.     AMCO at first sought and obtained three successive extensions of time to
respond to FNC's motion for dismissal sanctions.  (Dkts.  23, 26 and 29.)  Thereafter, AMCO
filed a Motion for Reconsideration (dkt. 34) and a Motion to Set Aside (dkt. 35).  Both motions
essentially asked the Court to rescind its December 17, 2004 Order.  (Dkts. 34 and 35.)

19.     In its motions, AMCO represented to the Court that it had complied fully with the
December 17, 2004 Order except in so far as that Order required the disclosure of the documents
related to the eValu patent application.  (Dkt. 35 at 2-3; dkt. 34 at 3, 7).

20.     AMCO's motions did not present any compelling facts or arguments, and they
were subsequently denied by the Court.  (Dkts. 39 and 40.)  In so doing, the Court reaffirmed
that FNC's motion to compel was meritorious and that AMCO had an obligation to comply fully
with the December 17, 2004 Order.  (Dkt. 40.)

21.     After its intervening motions were denied, AMCO sought and obtained three
additional successive extensions of time to respond to FNC's motion for dismissal sanctions
(dkts. 43, 45 and 46), eventually filing its opposition to FNC's motion for dismissal sanctions on
May 6, 2005.  (Dkt. 49.)  In its opposition, AMCO again claimed that it had substantially
complied with the Court's December 17, 2004 Order, except with that portion relating to the

production of its eValu patent application, with which AMCO claimed it "respectfully disagrees." (Dkt. 49 at 4, 7.)

22. Rather than comply with the Court's multiple discovery orders, on May 11, 2005, AMCO filed yet another motion, this time seeking to certify those orders for interlocutory appeal, or, in the alternative, to enter a new protective order. (Dkt. 51.)

23. AMCO's motion was opposed by FNC and ultimately denied by the Court. (Dkt. 68.)

      **F.**    **AMCO's Obstruction of Discovery Regarding Its Patent Application.**

24. The Court's December 17, 2004 Order required AMCO to produce, among other things, documents related to its eValu patent application, but AMCO refused to disclose it. The patent materials were considered highly relevant by FNC, because AMCO claimed that the trade secrets at issue in the case were the same as the invention for which it was seeking patent protection.

25. In addition to refusing to obey the Court's Order by producing its patent file, AMCO instructed its corporate representative not to answer patent-related questions at its deposition on February 11, 2005. AMCO's counsel cited relevance grounds alone as the basis for the instruction.

26. FNC filed its second motion to compel on February 18, 2005 (dkt. 24), which was directed specifically at AMCO's refusal to provide deposition testimony on the subject of its eValu patent application.

27. As with FNC's first motion to compel, AMCO failed to oppose this motion, and the Court ultimately granted it on April 7, 2005. (Dkt. 41.) The Court's Order required AMCO

to provide the deposition testimony sought by FNC at a remedial deposition to be conducted at AMCO's expense.

28.     Despite the Court's new Order requiring disclosure, at its remedial deposition on May 6, 2005, AMCO again refused to allow its corporate designee to testify on the subject of its eValu patent application.

29.     In the meantime, AMCO's obstruction of FNC's efforts to discover its eValu patent application file extended to its patent counsel, Howrey, whom AMCO instructed not to comply with FNC's subpoena.

30.     At AMCO's direction, Howrey failed to comply with FNC's December 20, 2004 subpoena.  Instead, Howrey served written objections to FNC, generally contending that it did not have to comply with the subpoena on grounds of privilege, relevance and burden.

31.     FNC responded to Howrey's objections and sought its cooperation without court intervention.

32.     On February 14, 2005, AMCO filed a motion to quash FNC's subpoena to Howrey.  (Dkt. 22.)  AMCO argued in its motion that its eValu patent application was not relevant to this action even though the subject of the application was the same product that embodied the alleged trade secrets at issue in this action.  (*Id.*)  AMCO also argued that the patent application contained sensitive confidential information that could not be disclosed even though the Court had entered a Stipulated Protective Order to address the parties' confidentiality concerns.  (*Id.*)

33.     The Court denied AMCO's motion to quash on March 18, 2005, reaffirming AMCO's – and its patent counsel's – obligation to produce the eValu patent application.  (Dkt. 33.)  The Court's order required "all subpoenaed material to be turned over" to FNC.  (*Id.*)

34.     Thus, by mid-April 2005, there were three separate court orders requiring production of documents relating to AMCO's patent application.  Neither AMCO nor Howrey complied with these orders.

35.     Unable to secure AMCO's or its patent counsel's compliance with the Court's orders requiring disclosure of the eValu patent application file, on May 17, 2005, FNC filed a motion for contempt sanctions against both.  (Dkt. 55.)

36.     Following the briefing of FNC's motion, and the denial of AMCO's intervening motions, AMCO finally abandoned its position and permitted Howrey, its patent counsel, to produce its eValu patent application file on June 17, 2005, nine months after the initial request from FNC to AMCO and six months after the Court's initial Order requiring the disclosure.  Less than two weeks of discovery remained at the time of AMCO's belated compliance.

## G.     AMCO's Obstruction of Discovery Regarding Other Relevant Documents.

37.     In briefs filed on its various motions and through counsel at the April 7, 2005 status conference, AMCO claimed that it was only intentionally withholding the patent materials, and in all other respects it had substantially complied with the Court's orders to provide discovery.  However, several of the depositions conducted by FNC revealed that AMCO had not complied with the other aspects of the Court's discovery orders.  The testimony provided by AMCO's witnesses indicated that AMCO knew or should have known of the existence of additional documents responsive to FNC's requests but had chosen not to produce them.

38.     Pat Moore, AMCO's first Rule 30(b)(6) corporate designee, testified on February 11, 2005 that AMCO had in its possession the following documents that had not been produced: (i) a letter between AMCO and Bank of America discussing the development of, and rights in, eValu, (ii) additional agreements between AMCO and Bank of America, the primary customer

with which AMCO claimed FNC had interfered, and (iii) additional agreements between AMCO and FNC.  Each of these were responsive to FNC's document requests served over four months earlier, but none had been produced.  AMCO's counsel agreed at the deposition and in subsequent communications to produce these documents.

39.     At the continuation of his deposition nearly three months later, however, Pat Moore testified that he had made virtually no efforts to locate the documents he previously identified as outstanding.  AMCO's counsel indicated on the record that the documents in question "are available," and again indicated that he would produce them.  These documents were never produced by AMCO.  At the sanctions hearing, AMCO's counsel claimed he had lost the letter to Bank of America.  No explanation has been given for AMCO's failure to produce the other documents.

40.     AMCO's second Rule 30(b)(6) designee, Tim McParland, identified additional documents that had not been produced at his deposition on May 9, 2005.  Specifically, Mr. McParland indicated that AMCO had in its possession technical documents related to eValu, such as process flow charts, meeting minutes, written documents (both typed and handwritten) describing the eValu process and "bug logs."  Each of these documents were responsive to FNC's document requests that had been served seven months prior, yet none had been produced.  Mr. McParland indicated that he had collected all of these documents and provided them to AMCO's counsel for purposes of this litigation "within the past six months" prior to his deposition. AMCO's counsel indicated on the record that the documents had not been produced and agreed to produce them.  AMCO ultimately produced some of these documents, but only on July 1, 2005, the day discovery closed.

41.     On June 30, 2005, Jothi Nallasamy, another AMCO employee, also identified responsive documents in AMCO's possession that should have been produced nine months earlier.  She testified that AMCO had in its possession a hard copy file containing her notes and technical documents concerning the joint project between AMCO and FNC that AMCO claims to have been the setting for FNC's alleged misappropriation.  Although she was identified by AMCO as the person principally responsible for that project, Ms. Nallasamy testified that she was never asked to turn over this file to AMCO's counsel for purposes of this litigation.  In addition, Ms. Nallasamy confirmed that she could print in hard copy the computer code behind the eValu product – another item that FNC had specifically requested – yet she was never asked to, and did not, perform this task.  The documents identified by Ms. Nallasamy were not produced by AMCO prior to the July 1, 2005 discovery cut-off or the July 19, 2005 sanctions hearing.

42.     On July 1, 2005, AMCO's patent counsel, Michael Bell, testified that additional patent documents existed that were not included in the June 17 production of the patent file.  Specifically, Mr. Bell testified that AMCO had filed an earlier provisional patent application for eValu, and that a different law firm had been engaged to accomplish that task.  During the sanctions hearing on July 19, 2005, AMCO's counsel confirmed that additional patent documents existed but had not been produced despite two court orders that had been issued several months prior.

43.     AMCO finally did produce approximately 1,500 pages of additional documents on July 1, 2005, the last day of discovery.  These documents contained critical, highly relevant information that FNC had requested over nine months earlier and that AMCO had been ordered to provide, including:  technical documents related to the interface project between FNC, AMCO

10

and Bank of America; eValu development and technical documents, including the documents identified by Mr. McParland at his deposition; and documents concerning Bank of America and the Appraisal Institute, third parties related to AMCO's and FNC's respective claims of tortious interference.

44.     AMCO's production included clearly labeled file folders and communications referring to company-maintained files relating to issues that were specifically identified in FNC's discovery requests.

45.     Although it had requested these documents, moved to compel their production and obtained several court orders requiring their production, because they were not produced until the last day of the discovery period FNC did not have the benefit of these critical documents during eight of the nine depositions FNC conducted.

46.     Moreover, because discovery closed on the same day it received AMCO's production, FNC was unable to depose any of the several additional individuals identified in AMCO's documents.

H.     **AMCO's Belated Production and Continuing Noncompliance With the Court's Discovery Orders.**

47.     As of April 11, 2005, the Court had issued no fewer than five Orders requiring AMCO to provide the discovery requested by FNC.

48.     The Court's December 17, 2004 Order granting FNC's first motion to compel required AMCO to cure all deficiencies outlined in FNC's motion on or before December 31, 2004.

49.     The Court's March 18, 2005 Order denying AMCO's motion to quash made clear that AMCO's patent materials were properly discoverable and required AMCO's patent counsel to turn over all subpoenaed materials.

11

50.     The Court's April 7, 2005 Order granted FNC's second motion to compel and required AMCO to provide deposition testimony related to the eValu patent application.

51.     The Court's two Orders of April 11, 2005 denying AMCO's motion for reconsideration and motion to set aside re-affirmed that FNC's initial motion to compel had merit and reiterated AMCO's obligation to comply with previous Court orders.

52.     While considering AMCO's various motions, the Court on April 7, 2005 extended the fact discovery deadline one last time to July 1, 2005.  (Dkt. 37.)  The Court advised the parties that "no further extensions" would be granted.  (*Id.*)  Thus, by mid-April 2005, it was clear that AMCO was obligated to produce its documents and that the parties would have less than three months to complete all outstanding discovery.

53.     Following the Court's warning that discovery would close fully and finally on July 1, 2005, FNC proceeded with the depositions of AMCO and third party witnesses even though it had not received many of the documents it sought in advance of those depositions.  In total, FNC noticed and took nine depositions.

54.     FNC took the deposition of AMCO, through its Rule 30(b)(6) representative, Pat Moore, on February 11 and May 6, 2005.

55.     FNC further deposed AMCO through another Rule 30(b)(6) designee, Tim McParland on May 9, 2005.

56.     FNC then deposed third party Marianne Angarola, a former AMCO employee, in Chicago, Illinois on June 21, 2005.

57.     On the following day, FNC also deposed another third party, the Appraisal Institute, through its Rule 30(b)(6) designee, John Ross, at its headquarters in Chicago, Illinois.

58.     On June 30, 2005, FNC deposed two current AMCO employees, Jothi Nallasamy and Chris Petsche.

59.     On July 1, 2005, FNC deposed AMCO's patent counsel, Michael Bell of Howrey in Washington, D.C.

60.     Finally, on July 7, 2005, FNC deposed another former employee of AMCO's, Matthew Dickerson.  Mr. Dickerson's deposition was originally scheduled to occur within the Court-ordered discovery period, however, the parties agreed to conduct it a week after the close of discovery to accommodate the schedule of AMCO's counsel.

61.     Notwithstanding the Court's five discovery orders and the existence of numerous responsive and highly relevant documents in AMCO's possession, AMCO did not produce documents from its own files until July 1, 2005, the last day of the discovery period.  Documents relating to its eValu patent application, which were produced from Howrey's files, were not provided until June 17, 2005.

62.     Thus, FNC took eight of its nine depositions without the benefit of the documents that AMCO withheld until July 1, 2005.

63.     Moreover, FNC took all nine of the above depositions without the benefit of the documents and information that AMCO has failed to provide altogether or that AMCO produced only after the July 19, 2005 sanctions hearing.

**I.**     **Discovery Deficiencies Remaining by the July 19, 2005 Sanctions Hearing.**

64.     On June 29, 2005, the Court set a hearing on FNC's pending motion for dismissal sanctions for July 19, 2005.  (Dkt. 75.)

65.     Notwithstanding AMCO's belated production on June 17 and July 1, 2005, as of the July 19, 2005 sanctions hearing AMCO had still failed to cure many of the deficiencies it had been ordered to correct.

13

66.    Specifically, AMCO had failed to provide:

    a.    additional agreements between AMCO and FNC;

    b.    communications between AMCO and Bank of America regarding the development of, and rights in, eValu;

    c.    additional agreements between AMCO and Bank of America;

    d.    the eValu computer code;

    e.    emails and other documents related to the interface project and AMCO's interactions with FNC;

    f.    the technical documents in Ms. Nallasamy's files;

    g.    the provisional patent application for eValu;

    h.    the calculation behind AMCO's stated damages of $10.75 million;

    i.    confidentiality agreements executed by AMCO's employees;

    j.    unredacted versions of documents previously produced with improper redactions;

    k.    a privilege log;

    l.    written responses to FNC's second set of requests for production; and

    m.    verifications of AMCO's interrogatory responses.

67.    AMCO produced additional responsive documents following the July 19, 2005 sanctions hearing.  Because discovery had been closed for weeks and the Court had already heard oral arguments on FNC's motion for dismissal sanctions, instead of curing any of the foregoing deficiencies, these documents served only to confirm AMCO's failure to comply with the Court's Orders.

68.     Despite AMCO's unwillingness to comply with its discovery obligations, AMCO has actively publicized its claims against FNC in this lawsuit.  AMCO has issued one or more press releases alerting the market place as to its allegations.  Testimony of the Appraisal Institute has shown that the continued pendency of AMCO's claims has caused FNC to lose potential customers.

## CONCLUSIONS OF LAW

69.     Dismissal of an action is an appropriate sanction against parties who refuse to obey orders of the court and choose to continually abuse the discovery process.  Civil Rule 37(b)(2)(C) provides that where a party "fails to obey an order to provide or permit discovery, including an order [granting a motion to compel under Civil Rule 37(a)] . . . the court in which the action is pending may . . . [enter] an Order . . . dismissing the action or proceeding or any part thereof, or rendering judgment by default against the disobedient party."  The same sanction is provided for in Civil Rules 41(b) and 37(d).

70.     In deciding whether the grant of a dismissal sanction is appropriate, four factors must be considered:  "(1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered."  *Southern Wabash Communications, LTD v. Union County Broadcasting Co., Inc.*, 69 Fed. Appx. 285, 290-92 (6th Cir. 2003).  *See also*, *U.S. v. Reyes*, 307 F.3d 451, 456-58 (6th Cir. 2002); *Harmon v. CSX Transportation, Inc.*, 110 F.3d 364, 368-69 (6th Cir. 1997).

71.     AMCO's discovery abuses have been willful.  AMCO has admitted this much with respect to the eValu patent application, which AMCO was ordered to provide first on

December 17, 2004 and again – along with its patent counsel – on March 18, 2005.  AMCO had the relevant documents in its possession, custody or control, but failed to comply with the Court's orders because it "disagreed" with them.  AMCO has not provided any justification or excuse for its failure to timely disclose its patent application.

72.     Willfulness and bad faith are presumed where "the party has the ability to comply with a discovery order but does not."  *Reyes*, 307 F.3d at 458; *Southern Wabash Communications, Ltd.*, 69 Fed. Appx. at 290.

73.     AMCO clearly knew or should have known of the existence of the responsive documents it withheld until the close of discovery.  Its corporate designees and fact witnesses admitted in depositions that they had responsive documents in their offices that had not been produced even after the Court had issued multiple orders requiring production.

74.     The documents that AMCO produced on the last day of discovery also indicate, by their very nature, that they were known or should have been known to AMCO.  AMCO had the ability to timely provide those responsive documents it produced on the last day of discovery as well as the ability to timely produce additional documents and information it had failed to provide as of the time of the July 19, 2005 sanctions hearing.

75.     AMCO has provided no compelling justification or excuse for its delay and its failure to comply with the Court's discovery orders.  It waived any objections to complete disclosure by failing to assert them in timely served written discovery responses.  *See e.g.*, Civil Rule 33(b)(4); *Cleveland Indians Baseball Co. v. U.S.*, 81 A.F.T.R.2d (RIA) 645 (N.D. Ohio 1998).  Moreover, any such objections would not have been supportable in view of the highly relevant nature of the documents that were withheld.

76.     On remarkably similar facts and circumstances, the Sixth Circuit has found
similar conduct to be willful and in bad faith:

> [Plaintiff] failed to respond to the amicable requests of [defendant]'s counsel, he
> failed to respond to [defendant]'s motion to compel, and he failed to comply with
> the district court's order [granting the motion to compel]. . . . This record is
> more than adequate to establish that [plaintiff]'s counsel was stubbornly
> disobedient and willfully contemptuous.  It is, in short, a clear record of delay
> and contumacious conduct.

*Harmon*, 110 F.3d at 368.

77.     Accordingly, the Court finds that AMCO's failure to comply with its discovery
obligations and the Court's orders has been willful and in bad faith.

78.     AMCO's willful discovery misconduct has prejudiced FNC.  It has caused FNC
to incur unnecessary attorneys' fees by requiring it to file at least ten briefs seeking compliance
or responding to groundless arguments against compliance by AMCO.  FNC also has been
unable to move the critical issue of ownership of its ValueSource product towards adjudication.
The costs, delays and uncertainty caused by AMCO's discovery misconduct constitute material
prejudice to FNC.  *See e.g., Southern Wabash Communications, Ltd.*, 69 Fed. Appx. at 291;
*Harmon*, 110 F.3d at 368.

79.     In addition, without the information and materials withheld by AMCO, FNC has
been unable to conduct other necessary discovery such as party and third-party depositions.  By
the time AMCO produced critical documents on July 1, 2005, the court-ordered discovery cut-
off was at hand, and FNC could not depose the additional individuals identified in those
documents.  This also amounts to significant prejudice to FNC.  *See Reyes*, 307 F.3d 451, 458.

80.     FNC has also been prejudiced by AMCO's delay, because FNC has been unable
to fully discover information necessary to rebut AMCO's allegations while AMCO has published

those allegations in the marketplace.  FNC has lost customers and revenue as a result of the pendency of AMCO's lawsuit because of the uncertainty surrounding its ValueSource product.

81.     Perhaps the most prejudicial aspect of AMCO's conduct is the denial of critical documents and information necessary for the nine depositions FNC took in this matter.  FNC was prevented from examining witnesses on those documents, and it cannot retake the depositions without substantial expense, burden, inconvenience and delay, especially in the case of third party witnesses who were deposed outside of Cleveland pursuant to subpoenas.

82.     Accordingly, the Court finds that FNC has been severely prejudiced by AMCO's willful and bad faith discovery conduct.

83.     AMCO has received repeated warnings from FNC that its continued refusal to cooperate in discovery or to comply with the Court's Orders may result in dismissal of its action. Such warnings, detailed in FNC's motion for dismissal sanctions, coupled with the warning provided by the motion itself, are more than sufficient to satisfy the notice factor.  *See e.g.*, *Southern Wabash Communications, Ltd.*, 69 Fed. Appx. at 291; *Reyes* 307 F.3d at 458; *Harmon*, 110 F.3d at 368.

84.     Further, in April 2005, after FNC's motion for sanctions was filed, the Court issued additional orders making clear that AMCO was required to produce documents. Nevertheless, AMCO still failed to comply in a timely fashion.

85.     Moreover, since Rule 37(b)(2)(C) explicitly makes available the sanction of dismissal for willful violation of even one court order, AMCO cannot claim surprise that its violation of as many as *five* separate Orders leads to dismissal.

86.     Less drastic sanctions have already been considered and imposed by the Court, but have been insufficient to deter and remedy AMCO's discovery abuses.  FNC has already

18

sought and obtained relief from the Court through its December 3, 2004 Motion to Compel.  The Court's December 17, 2004 Order granting FNC's motion to compel has been ineffective in securing the outstanding information from AMCO.

87.     Similarly ineffective were the Court's March 18, April 7 and April 11, 2005 Orders.  In light of AMCO's conduct, further orders requiring production or sanctions short of dismissal will not be effective in securing AMCO's compliance with its discovery obligations.

88.     Moreover, since discovery has now closed, such orders, even if they are followed by AMCO, cannot adequately remedy the prejudice AMCO's conduct has already caused to FNC.

89.     The sanction of dismissal is appropriate even where it is sought in the first instance, and much more so where the moving party first attempts to secure the dismissed party's compliance through less severe avenues.  *See Harmon*, 110 F.3d at 368.

90.     Accordingly, the Court finds that sanctions less drastic than outright dismissal have not been, and will not be, sufficient to coerce AMCO's compliance with the Court's discovery orders.  While dismissal is a severe sanction, it is warranted in this case in light of the egregious and continuing failure of AMCO to meet its discovery obligations in good faith and comply with multiple court orders requiring it to do so.

## **<u>ORDER</u>**

Based on the foregoing Findings of Fact and Conclusions of Law, the parties' briefs, oral argument and the record before the Court, the Court hereby finds that FNC's Motion for Dismissal Sanctions is well taken and is hereby GRANTED, and AMCO's Complaint is hereby dismissed, with prejudice, all costs to be assessed against AMCO.


**IT IS SO ORDERED.**


_____            _____

JUDGE DONALD NUGENT                                                      DATE

## <u>CERTIFICATE OF SERVICE</u>

The foregoing *Notice of Filing of Proposed Findings of Fact and Conclusions of Law*, was filed electronically with the Court this 29th day of July 2005.  Service will be made upon all parties of record via the Court's electronic notification system.


/s/ Horatio G. Mihet
Attorney for Defendant FNC, Inc.