UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO, EASTERN DIVISION

| | | |
|---|---|---|
| APPRAISAL MANAGEMENT COMPANY III, LLC dba AMCO, | ) ) ) | Case No. 1:04CV1158 |
| Plaintiff, | ) ) | JUDGE NUGENT |
| v. | ) ) | |
| FNC, INC., | ) ) | MAG. JUDGE VECCHIARELLI |
| Defendant | ) | |

**RESPONSE TO FNC'S PROPOSED
FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Appraisal Management Company III, LLC dba AMCO ("AMCO") submits this response in opposition to FNC, Inc.'s ("FNC") Proposed Findings of Fact and Conclusions of Law. While FNC has asserted a number of *post hac* bases to justify its request for dismissal sanctions, the only basis set forth in its February 1, 2005 motion (Dkt. No. 21) is the alleged failure of AMCO to comply with the Court's December 17, 2004 Order granting FNC's motion to compel (Dkt. No. 18) (the "December 17 Order") For a number of reasons, that Order is insufficient as a basis for the Court to impose the dismissal sanction FNC seeks.

**First,** the December 17 Order is not a proper basis for sanctions because it entered prematurely and as "without objection or response" before the time for AMCO's response under the Federal Rules of Civil Procedure. **Second,** FNC overreaches by continuing its pursuit of dismissal sanctions. **Third,** despite relying solely on AMCO's purported failure to comply with the December 17 Order, FNC now seeks to justify a dismissal sanction on matters that only were raised for the first time in its reply brief. **Fourth,** AMCO has not been afforded the requisite notice and has not acted in bad faith such that dismissal sanctions could be proper. **Fifth,** many of FNC's proposed findings of fact are either incorrect or insufficiently supported by the record. Based on the foregoing, dismissal sanctions are not warranted and should not be imposed by the Court.

I. **Argument**.

    A. **Standard for Imposing Dismissal Sanctions**.

Sanctions under either Rules 37(b) and 41(b) of the Federal Rules of Civil Procedure only can be imposed if there has been a failure to comply with a valid and subsisting order. Fed. R. Civ. P. 37(b); Fed. R. Civ. P. 41(b). *See, e.g., Shepherd v. American Broad. Cos.,* 62 F.3d 1469, 1474 (D.C. Cir. 1995) (reversal of entry of default judgment as sanction due to lack of order). Of the sanctions available to the Court, the Sixth Circuit frequently has cautioned that imposition of dismissal sanctions "is a harsh sanction which the court should order only in extreme situations showing 'a clear record of delay or contumacious conduct by the plaintiff.'" *Carter v. City of Memphis, Tennessee*, 636 F.2d 159, 161 (6th Cir. 1980) (*quoting Silas v. Sears, Roebuck & Co., Inc.*, 586 F.2d 382, 385 (5th Cir. 1978)). *See also Bishop v. Cross*, 790 F.2d 38, 39 (6th Cir. 1986) (dismissal requires a "degree of willfulness, bad faith or contumacious conduct"); *Patterson v. Township of Grand Blanc*, 760 F.2d 686, 688 (6th Cir. 1985); *Holt v. Pitts*, 619 F.2d 558, 562 (6th Cir. 1980).

Because of the severity of dismissal sanctions, the Sixth Circuit has identified four specific factors that the Court must consider before it can such sanctions can be imposed: (1) whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's failure to cooperate in discovery; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) the fourth factor is whether less drastic sanctions were imposed or considered before dismissal was ordered. *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990); B*ass v. Jostens, Inc.*, 71 F.3d 237, 241 (6th Cir. 1995). The imposition of dismissal sanctions where less severe sanctions would suffice constitutes an abuse of discretion that warrants reversal on appeal. *See Malautea v. Suzuki Motor Co.,* 987 F.2d 1536, 15 (11th Cir. 1993). The facts before the Court show that the dismissal sanctions FNC seeks are not warranted, and FNC has identified no other bases for alternate sanctions.

    **B.**    **The December 17 Order Was Improperly Entered and Cannot Support an Award of Sanctions.**

Because sanctions cannot be imposed under either Rules 37(b)(2) or 41(b) without a prior order, it is axiomatic that "[t]he validity of the sanctions … depends, in the first instance, on the validity of the discovery orders on which they were based." *Internat'l Union, UAW v. National Right to Work Legal Defense & Education Foundation, Inc.*, 590 F.2d 1139, 1152 (D.C. Cir. 1979). *See Steffan v. Cheney,* 920 F.2d 74, 75 (D.C. Cir. 1990) (reversing order of sanctions because "no sanction may be upheld if its imposition was based upon an error of law"). An award of sanctions therefore may be reversed if the underlying order is procedurally defective. *See Diehl v. H.J. Heinz Co.,* 901 F.2d 73, 73-75 (7th Cir. 1990) (reversing sanction of dismissal where order was procedurally unreasonable). In this case, the December 17 Order – the sole basis of FNC's motion – was prematurely entered by the Court and therefore cannot form the basis for the imposition of sanctions pursuant to FNC's February 1 motion.

Under the Federal Rules of Civil Procedure and this Court's Local Rules, AMCO had until December 20, 2004 to file its opposition to FNC's motion to compel. *See* Local Rule 7.1 (14 days for response to non-dispositive motion; three additional days if motion served by mail). The Court, however, without explanation usurped AMCO's right of response by granting FNC's motion on December 17, or three days before the conclusion of AMCO's response period. Compounding that error, the Court found as a matter of fact that, even though its time to respond had not yet concluded, AMCO had failed to respond or object to FNC's motion. (Dkt. No. 18, "Granted, w/o objection or response.")

In response, AMCO moved the Court to set aside the December 17 Order as premature. (Dkt. No. 35.) AMCO further made a good faith effort to produce most all of the discovery materials that were the subject of FNC's original motion. For example, AMCO provided a description of its eValu Product and copies of the forms that comprise a part of the product and made available for inspection a demonstration of that product. AMCO further supplemented its initial responses to FNC's interrogatories and produced a number of additional responsive documents it was able to locate.

Finally, AMCO moved the Court to reconsider its prior ruling to excuse it from producing highly confidential patent-related documents. (Dkt. No. 34.)

The effect of the Court's premature granting of FNC's motion was addressed on April 7, 2005, when the Court entered a second marginal order granting FNC's December 3, 2004 motion, effectively superceding the December 17 Order. (Dkt. No. 42.) Moreover, despite the fact that FNC did not actually oppose AMCO's motion to set aside,[1] the Court denied that motion on April 11, 2005. (Dkt. No. 40.) The Court, however, acknowledged that its original (and now superceded) Order was entered without consideration of a response from AMCO. (*Id.*, "even considering Plaintiff's response, the motion to compel is meritorious"). These two subsequent orders show that the December 17 Order was clearly unreasonable and the Court's finding that AMCO did not object or respond to FNC's motion was clearly erroneous such that it should not constitute a proper basis for the imposition of sanctions. *See Internat'l Union, UAW*, 590 F.2d at 1152; *Steffan,* 920 F.2d at 75; *Diehl* 901 F.2d at 73-75.

By these facts, sanctions would be available, if at all, only for the purported failure to comply with the December 17 Order that occurred **after** entry of the Court's April 7 and April 11 Orders addressing both the merits of FNC's motion, AMCO's opposition and AMCO's motion to set aside the December 17 Order. FNC, however, did not renew its February 1 motion for sanctions after entry of either the April 7 or the April 11 Orders. Therefore, FNC's motion is moot and sanctions under either Rule 47 or 41 are improper.

    C.    **While The Court Only Granted FNC's Motion "In Part," FNC Overreaches by Exclusively Seeking Dismissal Sanctions**

FNC continues to seek dismissal sanctions related to AMCO's alleged discovery abuses. However, the Court has granted the motion in part, and has requested to be briefed on the specific prejudice alleged by FNC. FNC has not demonstrated that AMCO has acted willfully with regard to

---

[1] While FNC purported to file a memorandum in opposition to AMCO's motion to set aside (Dkt. No. 36), the entirety of FNC's opposition is directed to the procedural AMCO's motion for reconsideration under Rule 60 of the Federal Rules of Civil Procedure. *See* Dkt. No. 36.

{720272:2}    4

any discovery issues. Indeed, AMCO produced over 1,400 pages of documents to FNC in January of 2005 that included, among other things, examples of forms used in the eValu process, process flows, description of the eValu process, hundreds pages of e-mail correspondence between various AMCO employees and FNC, and financial reports related to eValu.

It is true, that after AMCO responded to the Motion for Sanctions, AMCO's counsel was made aware during deposition on May 9, 2005, of documents that had not been turned over for productions. However, FNC has mischaracterized the testimony of Tim McParland regarding these documents and further has neglected to acknowledge the numerous documents produced in January of 2005 from Mr. McParland.

AMCO sought to collaborate with FNC concerning several unavoidable delays. For example, AMCO's counsel was out of the office from May 12 through May 28th for his wedding and subsequent honeymoon. FNC's counsel was informed that upon his return, the two sides would need address all outstanding discovery issues.  Since 2002, AMCO has moved locations twice and experienced a great deal of employee turnover.  This has made it difficult to locate documents, especially documents that are not in used during day-to-day business like development documents.

Simply put, FNC has sought dismissal on procedural grounds and has ignored attempts by AMCO's counsel to reasonably deal with discovery issues because it does not want to adjudicate the merits of the case. FNC has pursued dismissal on procedural grounds and has flatly refused to entertain any resolution to discovery matters short of dismissal of this case.

This is especially true because the Court's prior orders have resulted in FNC receiving the discovery at issue in its original motion to compel. AMCO's conduct in this case, while it has caused some problems, has not been willful, and dismissal would not be an appropriate sanction. However, FNC has pursued the "all or nothing" approach to this issue, and still seeks the ultimate sanction of dismissal. In this pursuit, it has failed to provide the Court with any other findings that would allow the Court to impose a sanction other than dismissal.

{720272:2} 5

### D. Matters Unrelated to the December 17 Order Are Irrelevant and Should Not Be Considered on FNC's Motion for Sanctions

Beyond the procedural defects of FNC's motion that FNC's overreaching, the Court should not consider any matters other than those which are specifically raised in FNC's December 3 motion. *See Shepherd,* 62 F.3d at 1474 (reversing sanctions not tied to specific order). Because the imposition of sanctions pursuant to Rule 37 of the Federal Rules of Civil Procedure can be "effectively a criminal contempt sanction," due process requires that opposing party be afforded both notice of the alleged violation and an opportunity to be heard. *See Nathcock v. Navistar Int'l Transp. Corp,* 53 F.3d 36, 41-42 (4th Cir. 1995); *Satcorp Int'l Group v. China Nat'l Silk Import & Export Corp.*, 101 F.3d 3, 6 (2d Cir. 1996). The notice requirement is met by the moving party identifying in its motion the order it alleges to have been violated. *See, e.g., DeVaney v. Continental Am. Ins. Co.,* 989 F.2d 1154, 1160 (11th Cir. 1993). This is especially true in this case because the December 17 Order does not independently delineate the particular discovery that is the subject of that Order.

That being said, there can be no dispute that the December 17 Order is the **only** discovery order alleged in FNC's February 1, 2005 motion for sanctions (Dkt. No. 21). Therefore, the Court may impose sanctions on that motion, if at all, **only** for the alleged violation of that single order for a failure to provide the discovery requested by FNC in its original motion. In that motion, FNC asked the Court to order AMCO to do the following:

(1) serve full and complete written responses to FNC's First Requests for Production;
(2) serve full and complete written responses to FNC's Second Set of Interrogatories and Requests for Production of Documents;
(3) produce all documents responsive to FNC's First and Second Requests for Production of Documents;
(4) serve full and complete written response [sic] to FNC's First Set of Interrogatories, by remedying the deficiencies described in this motion and in Exhibit D; and
(5) reimburse FNC for its reasonable expenses and attorneys' fees incurred in connection with researching, drafting and filing this Motion to Compel.

(Mem. in Sup. of Mot. to Compel, Dkt. No. 16, at 10.) As set forth below, and contrary to FNC's representations to the Court, AMCO has addressed each of these issues. The Court should not be

{720272:2} 6

distracted by FNC's arguments directed toward discovery not specifically addressed in its original motion to Compel, which are neither relevant nor germane to this proceeding.

For example, the Court's March 18, 2005 Order denying AMCO's motion to quash FNC's subpoena directed to AMCO's outside patent counsel (Dkt. No. 33) referenced by FNC at paragraph 49 of its proposed findings **cannot** form any basis for the imposition of sanctions on FNC's February 1 motion. That Order was entered almost two months after FNC filed its motion for sanctions and therefore cannot be a part of the basis for imposing sanctions under FNC's February 1 motion. Further, a subpoena does not constitute an "order" that can give rise to sanctions. *See Daval Steel Prods. v. M/V Fakredine,* 951 F.2d 1357, 1364 (2d Cir. 1991); *Wm. T. Thompson C. v. General Nutrition Corp.,* 671 F.2d 100, 102 (2d Cir. 1982); *Fremont Energy Corp. v. Seattle Post Intelligencer*, 688 F.2d 1285, 1286-87 (9th Cir. 1982). Finally, the **denial** of AMCO's motion to quash is not the same as an order directed to AMCO to "provide or permit discovery" as FNC would have the Court believe because the subpoena was directed to a third party. *See Daval*, 951 F.3d at 634 (order must be directed at party to be sanctioned).

Similarly, the Court's April 7, 2005 Order (Dkt. No. 41) relating to FNC's second motion to compel (Dkt. 24) was entered months after FNC filed the motion now before the Court and therefore cannot be the basis for the imposition of sanctions, either. This is significant because any prejudice FNC alleges with respect to the taking of depositions falls primarily under the Court's Order on FNC's second motion to compel. In all, AMCO has complied with the Court's December 17 Order

> E. **AMCO Did Not Receive Sufficient Notice of the Possibility of Dismissal and Has Not Engaged in Bad Faith or Contumacious Conduct**

As a matter of law, the Court must determine that AMCO has been notified that the failure to cooperate could lead to dismissal. *See Bank One*, 916 F.2d at 1073; B*ass,* 71 F.3d at 241. Generally, specific notice **by the Court** normally is required for dismissal sanctions to be upheld on appeal. *See Vinci v. Conrail,* 927 F.2d 287 (6th Cir. 1991) (holding that notice in standing order that failure to comply

{720272:2}  7

could result in dismissal was insufficient); *Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick and GMC Trucks*, 173 F.3d 988 (6th Cir. 1999) (dismissal sanctions not warranted where court did not provide notice); *Stough v. Mayville Cmty Schs.*, 138 F.3d 612 (6th Cir. 1998) (court should provide notice); *Carver v. Bunch*, 946 F.2d 451 (6th Cir. 1991). In the absence of specific notice by the Court, dismissal sanctions only can be imposed if the Court finds that the party to be sanctioned "has engaged in bad faith or contumacious conduct." *Harris v. Callwood*, 844 F.2d 1254, 1256 (6th Cir. 1988). Otherwise, to "protect the integrity of pretrial procedures," the Court only may impose a lesser sanction, if at all. *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 367-68 (6th Cir. 1997).

In this case, there has been no notice by the Court that it would consider dismissal sanctions and FNC has not established that AMCO has acted with any "bad faith" or demonstrated "contumacious conduct" that could entitle it to entry of dismissal sanctions in the absence of such notice by the Court. FNC's arguments that AMCO had notice as required by well-settled Sixth Circuit precedent ring hollow as no notice whatsoever was ever issued by the Court. Indeed, FNC's claim that "violation of as many as *five* separate Orders" could lead to dismissal (Proposed Findings ¶ 85, emphasis in original) is belied by the very text of the orders it references. **Not a single one** of these five orders provides actual notice of the type required before the Court can impose dismissal sanctions. Those orders are as follows:

(1) The December 17 Order (Proposed Findings ¶ 48);
(2) The March 18, 2005 Order denying AMCO's motion to quash FNC's subpoena to AMCO's patent counsel (Proposed Findings ¶ 49);
(3) The April 7, 2005 Order granting FNC's motion to compel deposition testimony (Proposed Findings ¶ 50);
(4) The April 11, 2005 Order denying AMCO's motion for reconsideration (Proposed Findings ¶ 51); and
(5) The April 11, 2005 Order denying AMCO's motion to set aside the December 17 Order (Proposed Findings ¶ 51).

{720272:2}  8

Further belying its argument that these orders aggregately provide the requisite notice, FNC wholly ignores the Court's April 7 Order superceded the December 17 Order, nullifying the effect of any purported prior notice. Hence, there is no basis to find that AMCO was given the required notice.

Similarly, the facts before the Court do not support a finding that AMCO has acted in bad faith or engaged in contumacious conduct. To the contrary, the Court specifically stated at the July 19 hearing that the issues about which FNC complains are "not completely unusual." (Tr. at 50.) AMCO may have been less than timely in providing discovery FNC has requested, it has been responsive to the Court and, sought the Court's assistance with respect to the matters about which FNC now complains.

For example, even though the December 17 Order was issued prematurely, AMCO exhibited good faith by producing much of the discovery that was the subject of that Order, including supplemental written responses and additional documents. *See Wouters v. Martin County, Fla.,* 9 F.3d 924, 934 (11th Cir. 1993) (reversing dismissal sanctions where delinquent discovery responses later were supplemented); *In re Paoli R.R. Yard PCB Litigation,* 35 F.3d 717, 792-93 (3d Cir. 1994), *cert. denied sub nom. General Elec. Co. v. Ingram,* 513 U.S. 1190 (1995) ("Lack of diligence does not constitute bad faith."). AMCO efforts to move the Court to reconsider its ruling with respect to the patent documents, moving the Court to either enter a protective order or certify that issue for appeal, and ultimately producing all of the requested materials is evidence of good faith. Finally, AMCO cannot have acted in bad faith because the operative order was prematurely granted without the benefit of opposition papers and was subsequently superceded by a later order by the Court on FNC's original motion.

Because the Court never gave notice that dismissal could result for a violation of the December 17 Order and the facts do not establish that AMCO has engaged in bad faith or contumacious conduct, FNC's motion for sanctions should be denied to the extent it seeks dismissal. Since FNC has failed to articulate a basis for any sanction other than dismissal, there is no basis for any other sanction deriving from the December 17 Order. Therefore, neither dismissal nor any other sanction should be imposed.

### F. Sanctions are not Warranted Because Many of FNC's Findings of "Fact" are Wholly Without Support or Flatly Incorrect

FNC's proposed findings of "fact" are polluted by a pattern of mischaracterizations, editorials, irrelevancies, and in some instances, blatant lies. The volume of these proposed findings require an almost paragraph-by-paragraph refutation. Because many of the proposed findings are redundant and are repeated *ad nauseum,* this memorandum will attempt to only address each issue once for the sake of brevity. The titles and editorial comments contained in FNC's proposed findings should be removed as they incorrectly characterize the events surrounding this case.

Section A: "The Parties' Claims." Paragraph 3 is inaccurate as FNC alleged counterclaims that AMCO distributed the Complaint in this case and that the contents of the Complaint themselves are defamatory and give rise to various causes of action.

Section B: "FNC's Written Discovery Requests." Paragraph 5 contains an unneeded reference to patent materials that are irrelevant to the issue before the Court. The Court previously denied a Motion for Contempt Sanctions filed against AMCO and its patent counsel related to the discovery of the Patent Materials.

Section C: "AMCO's Initial Failure to Provide Discovery." Paragraph 9 fails to acknowledge that the Court entered a Stipulated Protective Order on November 30, 2004, that was necessary before either side could produce the sensitive materials related to this litigation. Also, FNC's characterization that the responses provided by AMCO were "incomplete, vague and *evasive"* has neither been made a part of the record nor has FNC presented any evidence in support of this allegation.

Paragraph 10 should note that FNC's Motion to Compel (Dkt. No. 16) was filed a mere three days after the Court entered the Stipulated Protective Order. Also, the order granting the motion was entered prematurely. FNC filed its Motion under seal on December 3, 2004 and served upon AMCO via mail, thereby allowing AMCO an additional three days to respond for which the Court's order granting FNC's motion did not account.

FNC's facts further are deficient because they fail to acknowledge the health problems experienced by AMCO's counsel beginning the first week of December 2004. AMCO's counsel first experienced a back injury in the first week of December and was incapacitated for a majority of the month. He experienced problems with this injury, on and off, through April 2005. A large reason for this, as was discussed with FNC's counsel and this Court at the April 7, 2005 Status Conference, was the failure to properly diagnose the injury until the first week of April. This is vitally important to the issues presented before the Court. FNC has continuously attempted to characterize AMCO's behavior in this case as "willful." However, as the facts show, AMCO has complied with its discovery duties.

<u>Section D:  "AMCO's Noncompliance With the December 17, 2004 Discovery Order."</u>

Paragraphs 11-13 deal with AMCO's initial responses to discovery. As stated above, the December 17 Order was premature.  Shortly after entry of that order, however, AMCO had provided written responses to Interrogatories and produced over 1,400 pages of documents. Those documents were sent in two batches, one on January 5, 2005 and the other on January 10, 2005.

Paragraph 14 is false and should be corrected. AMCO's counsel appeared at the January 7th Status Conference by telephone he contacted the Court. Discovery was extended at that time for a multitude of reasons, including the scope of discovery necessary in this litigation and counsel's injury.

Paragraph 15 is irrelevant, and mischaracterizes the state of discovery issues at the time. AMCO responded to FNC's inquiry that it had produced the documents known to counsel at that time and assured FNC's counsel that it would its obligations to supplement discovery. FNC's counsel materially misrepresented that exchange at the June 29, 2005 Status Conference and mischaracterizes it once again. FNC's counsel attempted to tell the Court that AMCO told him that "no more documents would be provided." This was *false* and FNC's counsel knows it. At this point in discovery, AMCO was fulfilling its duty to reasonably locate and produce all non-privileged material that was in its possession, custody or control.

{720272:2}                                          11

Section E: "AMCO's Intervening Discovery Motions." Paragraphs 17 – 23 each contain allegations that are either untrue, irrelevant or a mere editorial by FNC. AMCO filed a Motion for Reconsideration (Dkt. No. 34) and a Motion to Set Aside (Dkt. No. 35) relating to FNC's Motion to Compel and the Court's premature ruling. The Court eventually denied the Motions, although it made a point to re-file the Order that granted FNC's Motion to Compel.

AMCO filed its response to FNC's Motion for Sanctions on May 6, 2005. AMCO did file a Motion for Certification of appealability of its denial of the Motion for Reconsideration. This Motion was properly brought, and FNC's attempt to characterize this as some frivolous diversion tactic is not based on fact and further is contrary to the direction of the Court at the close of the recent hearing.

In paragraph 23, FNC once again mischaracterizes the facts. The Motion to Certify for Appeal was rendered moot after AMCO notified the Court of its intent to produce these documents to FNC. Any proposed fact regarding the validity or invalidty of these Motions should be stricken. The Court was clear at the July 9th sanctions hearing that they did not want to characterize the various motions that were filed on these issues. (Tr. At 51)

Section F: "AMCO's Obstruction of Discovery Regarding Its Patent Application." This entire section, which contains Paragraphs 24 – 36, should be removed from any findings of fact. FNC filed a separate Motion for Contempt Sanctions against both AMCO and AMCO's patent counsel concerning the production of Patent Materials. This motion was denied prior to the July 19th Hearing. AMCO pursued various legal avenues to protect the secrecy of these documents and its patent counsel, as attorney to AMCO, awaited the outcome of the decisions of the Court.

Section G: "AMCO's Obstruction of Discovery Regarding Other Relevant Documents". The record is clear that AMCO produced 1,400 pages of documents in January, 2005 in response to FNC's request for production. Timothy McParland was deposed on May 9, 2005 after AMCO had responded to the Motion for Sanctions. He testified that, in addition to documents previously provided to AMCO's counsel, there were other documents that he relied upon in preparation for the deposition.

FNC counsel had agreed with AMCO's counsel that any outstanding documents previously unknown to AMCO's counsel would be produced. AMCO did not willfully withhold these documents. Mr. McParland provided AMCO's counsel with a good number of documents that were turned over in January 2005. As FNC was aware, AMCO's counsel was absent from the office and attending his own wedding and honeymoon from May 12 through May 28, 2005. It was made clear to FNC's counsel at that time, that upon his return, all outstanding documents would be collected and produced to FNC.

The search for these documents coincided with many instances where FNC flatly refused to cooperate with AMCO in order to deal with the outstanding discovery issues that plagued both sides. Counsel for both parties exchanged emails on June 7th wherein FNC's counsel indicated that he would "be happy to discuss" an overall deposition schedule for the remainder of the month after his return to the office on June 9th. However, upon his return, he promptly dispatched notices for depositions to AMCO's counsel in order to unilaterally schedule the deposition dates and make it as inconvenient as possible for AMCO to conduct depositions prior to the discovery cut-off. In a letter to FNC's counsel on June 16, 2005, AMCO proposed a way to alleviate both sides concerns but FNC was unresponsive. AMCO proposed that, discovery be extended so that both sides can conduct depositions and that FNC could conduct depositions using the documents to be produced. FNC declined to discuss this possibility.

FNC then proceeded to depose Marianne Angarola, The Appraisal Institute, Jothi Nallasamy, and Christopher Petsche, knowing that AMCO would allow them to extend discovery for these depositions and also knowing that it would shortly be receiving documents in response to discovery requests. FNC purposefully ignored these reasonable requests by AMCO in order to create a situation where it could cry foul and allege prejudice. FNC's claims of prejudice are disingenuous its conduct on this matter is evidence that AMCO did not act willfully to obstruct FNC.

In Paragraph 41, FNC falsely states that AMCO made no effort to collect documents from Jothi Nallasamy. Ms. Nallasamy produced a great number of documents that were turned over to FNC

in January that related to this case. AMCO's counsel asked Ms. Nallasamy to provide documents related to AMCO's relationship with FNC. Ms. Nallasamy's testified that she had a file containing certain notes and technical documents. AMCO's counsel was not aware that she had this specific file and it was not provided to him by Ms. Nallasamy. This was not obstructive behavior by AMCO, but merely an oversight on the part of Ms. Nallasamy, something that happens with clients on occasion.

In Paragraph 42, FNC makes its most egregious statement of its proposed findings where it states that AMCO did not produce provisional patent documents "despite two court orders". As was discussed many times with FNC's counsel, AMCO did not have these documents in its possession. FNC was aware of this and now attempts twist the truth as it seeks dismissal.

AMCO produced over 1,500 pages of documents on July 1, 2005 that could have been used during depositions if FNC had not unreasonably ignored AMCO's attempt to resolve discovery issues. FNC's statement that it did not have the benefit of these documents during 8 of 9 depositions is incorrect. These documents were revealed and produced after the first three depositions were conducted, however, AMCO's counsel was unaware of their existence prior to those depositions. FNC was given the opportunity to conduct the subsequent depositions after the production of additional documents but FNC adamantly refused the offer.

Section H: "AMCO's Belated Production and Continuing Non-Compliance With The Court's Discovery Orders." This entire Section simply repeats various "proposed findings" offered by FNC in earlier Sections. Paragraphs 53 – 59 reasserts FNC's allegations that is not afforded the chance to depose witnesses after having received discovery documents. As stated above, it is clear that FNC could have resolved the situation had it chose to work reasonably with AMCO with regard to these matters.

Matthew Dickerson, without objection from AMCO, agreed to be deposed after FNC unsuccessfully attempted to perfect service of a subpoena. The deposition was scheduled after discovery cutoff to accommodate all of the parties because FNC informed AMCO that the original date was cancelled due to their failure to serve the subpoena.

Section I: "Discovery Deficiencies Remaining by the July 19, 2005 Sanctions Hearing." Paragraph 65 is an irrelevant mischaracterization. FNC outlines a number of alleged items that had not yet been provided in Paragraph 66. All of the documents in AMCO's possession relating to items a – c, were provided prior to the Sanctions Hearing.  Item f was not revealed to AMCO's counsel until June 30, 2005 and were subsequently produced. FNC acknowledged that item g, the provisional patent application, was not in AMCO's possession. This was produced on July 20th after obtaining it from a third party. Verifications and a privilege log were also produced. It should be noted that FNC also failed to provide AMCO with a privilege log until after the Sanctions Hearing despite that the fact that it was requested in February 2005. Ultimately, the only documents not produced was eValu "computer code." In AMCO's written responses to Interrogatories, it clearly states that eValu is not a computer program or a piece of software. AMCO has never alleged FNC utilized AMCO's computer code, other than certain computer forms that were produced as part of discovery. Lastly, Paragraph 68 should be completely stricken for its irrelevance to the issues considered as it is a feeble attempt to impose a finding of fact related to FNC's Counterclaim.

I.      **Conclusion.**

For the foregoing reasons, the Court should deny FNC's request for imposition of dismissal sanctions and, because FNC has failed to provide any basis for the Court to fashion a different remedy, it should direct that all responsive information be produced by a date certain and permit this case to move forward toward trial.

Respectfully submitted,

| /S/ | /S/ |
|---|---|
| Michael R. Houston (0070203) | David T. Movius (0070132) |
| Appraisal Management Company III LLC | McDonald Hopkins Co., LPA |
| 6065 Parkland Boulevard, 2nd Floor | 600 Superior Avenue, East, Suite 2100 |
| Mayfield Heights, Ohio 44124 | Cleveland, Ohio 44114-2653 |
| Telephone: (440) 995-6070 | Telephone: (216) 348-5400 |
| Facsimile: (440) 995-6270 | Facsimile: (216) 348-5474 |
| E-Mail: Mike.Houston@amco.net | E-Mail: dmovius@mcdonaldhopkins.com |

*Attorneys for plaintiff*

{720272:2}                            15

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing **Response to FNC's Proposed Findings of Fact and Conclusions of Law** was filed electronically on this 5th day of August, 2005, and that all parties will be served via the Court's electronic filing system.

/s/ Michael R. Houston
Attorney for Plaintiff