UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **APPRAISAL MANAGEMENT COMPANY III, LLC dba AMCO,** | ) ) ) | CASE NO. 1:04 CV 1158 |
| Plaintiff, | ) ) | JUDGE NUGENT |
| v. | ) ) | |
| **FNC, INC.,** | ) ) ) | |
| Defendant. | ) | |

**FNC'S POST-HEARING REPLY MEMORANDUM
<u>IN SUPPORT OF MOTION FOR DISMISSAL SANCTIONS</u>**

AMCO's response to FNC's proposed findings and conclusions is fundamentally misguided. One might have expected AMCO to produce emails or other documentary evidence showing that a good faith search for documents was conducted, or perhaps to submit affidavits of AMCO employees setting forth an explanation why reams of obviously responsive documents were not produced until the discovery period had closed. Indeed, if it existed, such evidence should have been presented to the Court in AMCO's original response to FNC's motion for sanctions, or certainly at the July 19 sanctions hearing, but it was not.

Instead, AMCO principally relies on a superficial and ultimately irrelevant argument that the Court's original December 2004 discovery order was technically defective. The argument is so specious and hyper-technical it can only be characterized as silly. The remainder of the brief amounts to half-hearted and unsupported contentions that AMCO's conduct was innocent and excusable. These arguments are not supported by any evidentiary record whatsoever and fly in the face of overwhelming evidence that AMCO knew of but did not produce key documents, some of which continue to be withheld to this day.

In the end, AMCO has submitted nothing to show that its actions should be excused or that dismissal sanctions are not warranted.  It has proposed no alternative sanction regime, and indeed none would be sufficient to remedy the prejudice visited upon FNC as a result of AMCO's persistent refusal to comply with its discovery obligations and the Court's orders throughout the discovery period.  FNC's motion should be granted and AMCO's claims dismissed for its failure to comply with discovery orders.

### I.  Dismissal Sanctions Are Warranted.

AMCO's conduct in this litigation has been a procession of missed deadlines, false promises and frivolous motions.  Nevertheless, in its brief AMCO seeks to escape any consequences from its behavior through a sleight of hand argument worthy of Houdini.  It contends, on the one hand, that the Court should consider only conduct specifically relating to the December 17, 2004 discovery order (Brf. at 6-7), but on the other, that the same order is procedurally defective and therefore cannot be the basis for sanctions (Brf. at 2-4).  The upshot of the artifice created by AMCO is that the Court should ignore AMCO's record of egregious conduct but treat an immaterial technical error as dispositive.  But like any illusion, AMCO's argument is dispelled by facts and logic.

### A.  The Court Should Consider AMCO's Conduct Throughout the Litigation.

In considering sanctions for discovery abuses, the Court is entitled – indeed required – to consider all of the facts and circumstances in the case.  *See National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 641-42 (1976) (court is required to consider the full record in determining whether to dismiss for failure to comply with discovery orders), *citing Link v. Wabash R. Co.*, 370 U.S. 626, 633-34 (1962).  None of the cases that AMCO cites even remotely imply that the Court should evaluate AMCO's noncompliance with the December 17 Order in a vacuum, divorced from AMCO's later actions and its behavior in response to the

2

Court's subsequent orders. Indeed, as the Supreme Court noted in *National Hockey League* and *Link*, such an approach would be much more likely to produce an unfair result.

Here, AMCO's initial failure to produce virtually any documents led to FNC's motion to compel and the Court's December 17 Order. Its subsequent failure in January 2005 to fully comply with that order by making a complete production led to FNC's motion for sanctions. For reasons mainly due to AMCO's obstruction and delay – specifically, its filing of several intervening motions and its false promises of compliance at status conferences and in briefs – the Court did not conduct a hearing on FNC's motion until July 19, 2005. The facts uncovered in the period between the filing of FNC's motion for sanctions and the evidentiary hearing are highly relevant and must be considered by the Court.

As for the validity of the December 17 Order, AMCO's argument is utterly disingenuous. First, regardless of whether the Court's order was precipitous, it was obviously correct. At the time it was entered, AMCO had produced only three documents in response to FNC's requests. Indeed, in the weeks following the order, AMCO did not seek leave to file a response or reconsideration of the order. Instead, it made a hasty (albeit incomplete) production of documents, paid FNC's attorneys' fees as ordered, and represented to the Court at a January status conference that it would comply in full. Second, AMCO finally did raise the timing of the Court's order in motions filed in March 2005. In denying those motions, the Court made clear that, regardless of AMCO's belated arguments, the Court's original order was "meritorious." Thus, the technical defect in the December 17 Order now cited by AMCO is both completely immaterial to an evaluation of AMCO's conduct *and* nevertheless has been previously considered and rejected by the Court as a basis for excusing AMCO's conduct.

Not surprisingly, the cases AMCO relies upon do not stand for the proposition that an immaterial technical defect in a discovery order precludes the Court from imposing sanctions.

3

*Intn'l Union, UAW v. National Right to Work*, 590 F.2d 1139, 1152 (D.C. Cir. 1979), involved a trial court's failure to fully consider a party's First Amendment objection to producing documents before entering summary judgment (*not* Rule 37 dismissal sanctions).  Similarly, *Steffan v. Cheney*, 920 F.2d 74, 75 (D.C. Cir. 1990), involved a plaintiff who legitimately resisted discovery into his sexual orientation.  The discovery orders at issue in both cases were premised on significant errors of law, *not* irrelevant technical defects.[1]

Further, AMCO's argument that FNC seeks sanctions based on matters unrelated to the December 17 Order is both legally and logically unsound.  The cases relied upon by AMCO all involve circumstances where sanctions were issued with no underlying order compelling production or where the order involved was clearly unrelated to the nature of the sanctions.  S*ee Shepherd v. American Broad Cos.*, 62 F.3d 1469 (D.C. Cir. 1995) (sanctions issued without any underlying discovery order); *Hathcock v. Navistar Intn'l Transp. Corp.*, 53 F.3d 36, 41-42 (4th Cir. 1995) (sanctions issued based on violation of scheduling orders only); *Satcorp Intn'l Group v. China Nat'l Silk Import & Export Corp.*, 101 F.3d 3, 6 (2nd Cir. 1996) (monetary fine issued without imposition of contempt order).

More fundamentally, however, AMCO's argument that anything transpiring after FNC's February 1, 2005 motion for sanctions must be unrelated to the December 17 Order, and thus may not be considered by the Court, defies common sense.  What FNC consistently has complained of all along has been AMCO's refusal to provide critical documents in this case, all of which were requested in FNC's original written discovery and subject to the Court's December 17 Order.  In its motion papers and at the sanctions hearing, FNC has relied upon events

---

[1] The third case relied upon by AMCO here, *Diehl v. H.J. Heinz Co.*, 901 F.2d 73 (7th Cir. 1990), is completely inapposite.  In *Diehl*, the trial court imposed an impossible condition upon the party seeking to avoid dismissal sanctions, namely, that it cure the discovery failures and complete discovery by the end of that day.  The Seventh Circuit made clear that it reversed not because of the severity of the sanction imposed – indeed, it stated that dismissal was warranted given the party's conduct – but because the trial court had set forth an unreasonable condition.  Nothing of the sort has occurred here.

occuring subsequent to the Court's Order to show that (1) AMCO had the ability to comply on a timely basis (e.g., deposition testimony making clear that responsive documents were available and known to AMCO employees), (2) AMCO was on notice that it needed to comply (e.g., subsequent Court orders and communications from FNC counsel), and (3) FNC suffered prejudice (e.g., the nature of the documents ultimately produced by AMCO after FNC had completed depositions in the case).  None of this is "unrelated" to the original December 17 Order – on the contrary, it proves that AMCO compounded its original failure to comply with more stonewalling and willful disobedience.

Finally, if AMCO truly believes that the Court's perspective has been distorted by the evidence submitted by FNC subsequent to the filing of its original motion, AMCO has had ample opportunity to correct the record.  First, AMCO filed multiple intervening motions relating to discovery matters subsequent to FNC's motion for sanctions.  Second, AMCO had the opportunity to offer evidence or any new arguments that it had at the July 19, 2005 sanctions hearing.  Third, AMCO was given yet another opportunity to provide a rational explanation – or even a forthright apology – for its behavior in the post-hearing briefing ordered by the Court.  However, at no point has AMCO actually submitted a single affidavit, letter or other bit of evidence to support its argument that it complied with the Court's discovery order or should be excused for having failed to do so.  The absence of such evidence speaks much more loudly than any of AMCO's superficial arguments about procedural defects.

    B.    **AMCO Has Had Plenty of Notice.**

AMCO's argument that it did not have sufficient notice of a possible dismissal does not withstand serious scrutiny.  As an initial matter, AMCO cites older Sixth Circuit precedent, none of which involves facts similar to the present case.  The more recent cases cited by FNC make clear that no specific notice is required from the Court, and even the opposing party's motion for

sanctions need not expressly mention dismissal. *See Sexton v. Uniroyal Chemical Co., Inc.*, 62 Fed. Appx. 615, 620 (6th Cir. 2003); *Southern Wabash Communications, Ltd. v. Union County Broadcasting Co., Inc.*, 69 Fed Appx. 285, 290-92 (6th Cir. 2003). However, a review of any of the cases relating to this issue makes clear that the "notice" requirement is merely meant to prevent arbitrary action by the Court. It does not require the equivalent of a *Miranda* warning to recalcitrant parties.

Regardless of AMCO's attempt to portray the notice requirement as more stringent than it actually is, it is undoubtedly satisfied in the present case. FNC's motion for dismissal sanctions has now been pending for more than six months. AMCO has known for that entire period what is at stake from its refusal to provide discovery. In addition, numerous communications from FNC have made the possibility of dismissal explicit.

Moreover, any doubt that AMCO was at risk of dismissal was removed at the April 7, 2005 status conference. As the Court's minute entry reveals, during that 45 minute conference, the parties discussed the various discovery problems and pending motions. The Court indicated that it had ruled (or would shortly rule) on all of the pending discovery motions *except* FNC's motion for sanctions, which remained pending subject to the completion of briefing. Thus, as stated in the minute entry, the Court made AMCO aware that the "remaining issue is Def.'s Motion to *Impose Dismissal* Against AMCO." (Emphasis added.) After that discussion, there could be no doubt that the Court would be considering dismissal. A copy of the Court's April 7, 2005 Minute Order (Dkt. 37) is attached hereto as Exhibit A.

Moreover, the Court's scheduling of a sanctions hearing, which was set almost six months after FNC's motion was filed, provided clear notice to AMCO that dismissal was a possibility. AMCO had the opportunity at that hearing to present evidence to show that dismissal would not be appropriate, but it did not.

6

Lastly, the procedure the Court has followed since the hearing – i.e., granting FNC's motion for sanctions in part but leaving the specific sanction open for further briefing – is itself a more than adequate method of notifying AMCO that it is facing a possible dismissal of its claims. AMCO has failed even now to submit evidence supporting its position.

In all, there is no good faith basis for AMCO to claim that it is not now, and has not for months been, on notice that its claims may be dismissed as a result of its discovery abuses.

## II. FNC's Proposed Findings of Fact Are Accurate.

Most of AMCO's response to FNC's proposed findings of fact are insignificant quibbles with FNC's word choices or groundless (and pointless) accusations of bad faith by FNC. None of AMCO's comments are supported by any evidence. For example, AMCO repeatedly claims that it complied with discovery and made a good faith search for documents. However, just to cite one example, AMCO has never submitted an affidavit or other evidence explaining how AMCO failed during the entire discovery period to produce hundreds of pages of key documents located in the office of Tim McParland – documents that Mr. McParland himself chose to review to prepare for his deposition.[2] FNC has submitted documents, correspondence, deposition testimony and other evidence to support each of its proposed findings. AMCO's unsupported assertions and accusations cannot overcome the evidence submitted by FNC.

While most of AMCO's assertions are of little or no consequence, three issues raised by AMCO should be addressed and corrected.

### A. AMCO's Refusal to Provide Patent Documents from Its Files is Relevant.

AMCO repeatedly asserts that in determining sanctions the Court should not consider AMCO's stubborn refusal to provide documents relating to its eValu patent application because

---

[2] AMCO contends that FNC has mischaracterized Mr. McParland's testimony, but it fails to explain its contention or support it with other contrary testimony by Mr. McParland or anyone else. In fact, Mr. McParland's damning admissions are clear, and they speak for themselves.

7

the Court denied as moot FNC's separate motion for contempt relating to a third party subpoena seeking those documents. In reality, AMCO's conduct, both as to the documents contained within its own files and as to its obstruction of FNC's subpoena, is highly relevant to the Court's consideration of sanctions.

AMCO ignores that FNC originally requested those documents from AMCO's files and devoted a significant portion of its motion to compel and motion for sanctions to AMCO's refusal to produce them. While AMCO ultimately relented and allowed its patent counsel to produce its documents shortly before the close of the discovery period, AMCO did not produce any patent documents from its own files until *after* the July 19 sanctions hearing. AMCO's claim that those documents were in possession of its former in-house counsel is of no moment – they were obviously available to AMCO and could have been obtained much sooner in response to the December 17 Order requiring AMCO to produce them.

Further, AMCO's actions in preventing production by its patent counsel, filing multiple frivolous motions before conceding the issue, and refusing to allow deposition witnesses to testify despite Court orders making clear the issue was fair game, are all part and parcel of AMCO's pattern of obstruction and noncompliance. The fact that FNC filed a separate motion for contempt seeking sanctions primarily against AMCO's patent counsel for its own noncompliance – a motion that the Court only denied "as moot" after AMCO permitted its counsel to produce documents – does not in any way diminish or dispose of AMCO's improper conduct. As noted above, the Court is warranted in considering the entire history of the litigation in deciding what sanctions are appropriate. *See National Hockey League*, *supra* at 641-42. AMCO cannot deflect attention from its improper actions by reference to a tangential motion that was not even decided by the Court on the merits.

### B. AMCO's Initial Production was Deficient.

AMCO also repeatedly makes mention of its production in early January (only after FNC's motion to compel had been granted) of "1,400 pages" of documents, as if this fact should mitigate its complete failure to produce thousands of pages of highly relevant memos, work papers, emails and other key documents. While the January production did contain some responsive documents (although a substantial portion of the pages are attributable to multiple printouts of sales and customer data, not substantive memos or work papers), FNC made clear in correspondence following the production that it was obviously incomplete. *See* Ex. F to FNC's Motion for Dismissal Sanctions. In that correspondence, FNC identified many categories of documents that it believed to be missing from AMCO's production. Notably, several of those categories included documents that were later identified in the McParland, Moore and Nallasamy depositions as having been in AMCO's possession all along, none of which were produced until the discovery period was over.

In short, AMCO's production of about a half-box of documents in January 2005 in response to an order compelling discovery (in a case in which it seeks over $10 million in damages) in no way mitigates its wholesale failure to collect and produce the thousands of pages of other documents that FNC all along was requesting but had to do without during the course of discovery.

### C. AMCO Still Has Failed to Produce Responsive Documents in Its Possession.

At the end of its brief, AMCO claims, without reference to any evidence, that it has produced several of the categories of documents listed by FNC as still outstanding as of the July 19 sanctions hearing. For the record, AMCO has not produced all documents referenced in FNC's categories a – c, as these categories include the documents specifically identified by Pat Moore in his deposition (*see* App. Tab 3), which have never been produced. AMCO admits to

9

continuing to withhold the eValu computer code, relying on a relevance argument that is not only untimely but obviously meritless given the nature of this case.  Further, while some additional documents were produced by AMCO after the sanctions hearing, including documents relating to AMCO's eValu patent application, they did not cure most of the deficiencies noted in FNC's proposed findings and conclusions.  And the documents were produced far too late to ameliorate the prejudice already visited upon FNC as a result of AMCO's failure to provide them during the discovery period.

## CONCLUSION

For the foregoing reasons and those stated in its prior memoranda and at the sanctions hearing, FNC respectfully requests that the Court adopt its proposed Findings of Fact and Conclusions of Law and enter an Order dismissing AMCO's Complaint with prejudice.

Respectfully submitted,

/s/ Robert F. Ware
Robert F. Ware (0055515)
  *Robert.Ware@ThompsonHine.com*
Horatio G. Mihet (0075518)
  *Harry.Mihet@ThompsonHine.com*
**THOMPSON HINE LLP**
3900 Key Center
127 Public Square
Cleveland, Ohio 44114-1291
(216) 566-5500 – Phone
(216) 566-5800 – Fax

Attorneys for Defendant FNC, Inc.

## CERTIFICATE OF SERVICE

The foregoing *FNC's Post-Hearing Reply Memorandum in Support of Dismissal Sanctions*, was filed electronically with the Court this 15th day of August 2005.  Service will be made upon all parties of record via the Court's electronic notification system.


/s/ Robert F. Ware
Attorney for Defendant FNC, Inc.