# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| APPRAISAL MANAGEMENT | ) | CASE NO. 1: 04 CV 1158 |
| COMPANY III, LLC dba AMCO, | ) | |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | |
| FNC, INC., | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| Defendant. | ) | |

This matter comes before the Court upon Defendant FNC, Inc.'s ("FNC's") Motion To Impose Dismissal Sanctions Against Appraisal Management Company III, LLC dba AMCO ("AMCO"). (ECF # 21.) For the reasons set forth below, FNC's Motion is GRANTED. AMCO's Complaint against FNC is DISMISSED.

## I. BACKGROUND

In evaluating the merits of FNC's Motion To Impose Dismissal Sanctions against AMCO, this Court has thoroughly and exhaustively reviewed the record in this case, including pleadings, orders, minutes of proceedings, and a hearing transcript. The relevant facts and discovery history are set forth below.

### A. FACTS[1]

AMCO is a provider of appraisal valuation products and services that developed a property

---

[1] The facts as stated in this Memorandum Opinion and Order are set forth to provide context for the resolution of the instant Motion only, and they are not, and should not be construed as, findings of this Court.

valuation product named eValu, which it sells to various clients for a profit. (ECF # 1 at ¶¶ 10-11, 13.) AMCO agreed to work with FNC, a corporation also involved in the real estate loan market, pursuant to the terms of a Service Provider Agreement. (*Id.* at ¶ 16.) Prior to the disclosure of any confidential information in connection with that working relationship, AMCO and FNC entered into an agreement known as the Confidential Information/Non-Disclosure Agreement (the "NDA"). (*Id.* at ¶ 15.) After execution of the NDA, AMCO provided FNC access to confidential information pertaining to eValu and other proprietary information. (*Id.* at ¶¶ 16-17.)

On June 17, 2004, AMCO filed a four-count Complaint against FNC, claiming that FNC used AMCO's confidential and proprietary information in order to develop a competitive product named ValueSource. (*Id.* at ¶ 19.) In Count I, AMCO claims that FNC breached the NDA by "utilizing Confidential Information owned by [AMCO] for its own commercial use in the development of ValueSource and by the disclosure of ValueSource to third parties and the property valuation industry." (*Id.* at ¶¶ 24-27.) In Count II, AMCO alleges that FNC violated the Uniform Trade Secrets Act and misappropriated AMCO's trade secrets. (*Id.* at ¶¶ 28-32.) In Count III, AMCO asserts that FNC "intentionally and/or recklessly interfered with AMCO's business relationships." (*Id.* at ¶¶ 33-36.) Finally, in Count IV, AMCO alleges that it is entitled to declaratory, injunctive and supplemental relief. (*Id.* at ¶¶ 37-38.)

On October 15, 2004, FNC filed an Amended Answer denying all material allegations in AMCO's Complaint. (ECF # 10.) FNC also filed Counterclaims against AMCO, alleging that AMCO improperly publicized the lawsuit and the allegations in its Complaint, which FNC claims are false and defamatory. (*Id.*) FNC's claims consist of business defamation (Count I), commercial

disparagement (Count II), a violation of Ohio's Deceptive Trade Practices Act (Count III), tortious

interference with business relations (Count IV), abuse of process (Count V), and unfair competition

(Count VI).  (*Id.*)

## B.  DISCOVERY

### 1.  FNC's First Motion To Compel And Related Motions

On December 3, 2004, FNC filed a Motion To Compel Discovery And Recover Expenses.

(ECF # 15.)  In the Motion, FNC requested that the Court order AMCO to do the following on or

before December 31, 2004:

1. Serve full and complete written responses to FNC's First Requests for Production;

2. Serve full and complete written responses to FNC's Second Set of Interrogatories and Requests for Production of Documents;

3. Produce all documents responsive to FNC's First and Second Requests for Production of Documents;

4. Serve full and complete written responses to FNC's First Set of Interrogatories, by remedying the deficiencies described in the Motion and in a December 1, 2004 letter to AMCO; and

5. Reimburse FNC for its reasonable expenses and attorneys' fees incurred in connection with the Motion.

(*Id.* at 10.)  On December 17, 2004, this Court granted the Motion To Compel.  (ECF # 18.)  In

response to the Court's Order, AMCO paid FNC attorneys' fees and provided FNC with some

additional materials.  (ECF # 35 at 2.)

On March 18, 2005, AMCO filed a "Motion In Opposition To Defendant's Motion To

Compel Discovery Or Alternatively, Plaintiff's Motion For Reconsideration."  (ECF # 34.)  In the

Motion, AMCO requested that this Court deny FNC's Motion To Compel filed on December 3, or to reconsider its December 17, 2004 Order granting the Motion To Compel.  AMCO specifically opposed FNC's attempt to compel documents pertaining to the pending patent application for its eValu product.  (*Id.* at 2.)  AMCO argued that any such materials were not relevant to this case, and thus those documents should not be discovered.  (*Id.* at 5-7.)

Also on March 18, 2005, AMCO filed a "Motion To Set Aside Judgement [sic]," asking this Court to set aside its December 17, 2004 Order granting FNC's Motion To Compel.  (ECF # 35.)  In the Motion, AMCO again opposed the requested "discovery of materials related to [AMCO's] patent application with regard to its eValu product. . . ." (*Id.* at 2.)  AMCO reiterated that it did not oppose the entirety of FNC's Motion To Compel, and stated that it "made a good faith effort to comply completely with this Court's Order compelling discovery, except as the material related to [its] Application." (*Id.*)

On April 1, 2005, FNC filed an Opposition to AMCO's Motion For Reconsideration and Motion To Set Aside Judgment.  (ECF # 36.)  FNC stated that patent applications and related materials are relevant and discoverable in actions involving alleged trade secrets that are embodied in the patent.  (*Id.* at 6.)  More specifically, FNC argued that AMCO's eValu patent is highly relevant to this case for two main reasons: (1) the patent application's detailed description is likely to reveal whether FNC's product is distinguishable from AMCO's product; and (2) the patent application file is likely to contain communications concerning novelty and prior art.  (*Id.* at 7.)  FNC likewise asserted that, even apart from AMCO's refusal to provide information relating to the patent, its discovery conduct remained "purposefully vague, inadequate and in bad faith." (*Id.*)

4

On April 11, 2005, this Court entered Orders denying AMCO's Motion For Reconsideration and Motion To Set Aside Judgment.  (ECF # 39 and # 40.)

One month later, on May 11, 2005, AMCO filed a Motion For A Protective Order Or To Certify Appeal relating to the denial of the Motion For Reconsideration and Motion To Set Aside Judgment.  (ECF # 51.)  In the Motion, AMCO stated that, if the Court would enter an order prohibiting the dissemination of the patent application to Neil Olson, FNC's Chief Legal Officer, then it would produce the patent application to FNC's trial counsel.  (*Id.* at 4-5.)  Alternatively, AMCO requested that the Court grant it permission to appeal the Orders denying the Motion For Reconsideration and Motion To Set Aside Judgment.  (*Id.* at 5.)  AMCO argued that allowing such an appeal would "permit [it] to seek review of the order compelling it to produce the Patent Application[,] without subjecting it to the potential for irreparable harm that could result from the further dissemination of confidential and proprietary information."  (*Id.*)

FNC filed an Opposition to the Motion on May 25, 2005.  (ECF # 57.)  FNC argued that AMCO's proposed "compromise" failed to resolve many remaining discovery issues, which included "at least four categories of documents and information – not including its eValu patent application file – which it failed to disclose to FNC, despite being ordered to do so time and again."  (*Id.* at 2.)  FNC further stated that the Stipulated Protective Order adequately protects the confidentiality of information produced in this case, and that the request for an appeal of the Court's previous rulings is procedurally improper.  (*Id.* at 4.)

On June 24, 2005, this Court denied AMCO's Motion For A Protective Order Or To Certify Appeal.  (ECF # 68.)  In doing so, the Court stated that it would take remedial action in the event that

Mr. Olson, as Chief Legal Officer, violated the conditions of disclosure.  (*Id.*)

## 2.  The Instant Motion To Impose Dismissal Sanctions

On February 1, 2005, FNC filed a Motion To Impose Dismissal Sanctions, claiming that AMCO had defied the Court's December 17 Order and continued discovery abuses.  (ECF # 21.) FNC stated that, although AMCO had submitted supplemental discovery responses and additional documents, its production "fell far short of what FNC had requested, and of what the Court had ordered AMCO to produce."  (*Id.* at 5.)  According to FNC, the deficiencies consisted of AMCO's failure to provide information and documents concerning its patent application for eValu, basic information concerning the trade secrets that AMCO alleges were misappropriated, a calculation of alleged damages and financial documents, information and documents concerning the development and operation of eValu, and AMCO's comparisons of eValu and ValueSource.  (*Id.* at 7-11.)  FNC further asserted that AMCO had improperly redacted relevant information and failed to provide FNC with a privilege log.  (*Id.* at 11-12.)  FNC argued that, because these deficiencies deprived it of information necessary to conduct depositions and consult with experts, both of which are vital to its defense, and because AMCO had willfully defied its discovery obligations and the Court's Order, the sanction of dismissal is warranted.  (*Id.* at 1.)

## 3.  AMCO's Motion To Quash

On February 14, 2005, AMCO filed a Motion To Quash a subpoena for documents issued to AMCO's patent counsel, the law firm of Howrey, Simon, Arnold & White LLP ("Howrey Simon"). (ECF # 22.)  AMCO argued that other means existed to obtain the information, and that the information is privileged and not relevant to this case.  (*Id.* at 5-7.)

6

FNC filed an Opposition to the Motion To Quash, arguing, *inter alia*, that the documents are not available through any other means, are non-privileged and highly relevant to the case.  (ECF # 28.) FNC likewise asserted that this Court lacks jurisdiction over the subpoena for Howery Simon's documents, which was issued in the United States District Court for the District of Columbia.  (*Id.* at 7-8.)

On March 18, 2005, this Court denied AMCO's Motion To Quash the subpoena for documents issued to Howrey Simon and ordered the production of all non-privileged, subpoenaed materials.  (ECF # 33.)

**4.      FNC's Second Motion To Compel**

On February 18, 2005, FNC filed a Motion To Compel Deposition Testimony And Recover Expenses.  (ECF # 24.)  In the Motion, FNC stated that AMCO had refused, at the instruction of its counsel, to answer deposition questions about its eValu patent application, on the ground that it was not relevant to this case.  (*Id.* at 1.)  Based on its position that relevance-based objections are an improper basis for instructing a deponent not to testify, and that the information sought is highly relevant to this case, FNC requested that the Court order AMCO to fully and completely respond to the questions relating to the patent application.  (*Id.* at 1-2.)  AMCO did not file any opposition to the Motion.  On April 7, 2005, this Court granted FNC's Motion.  (ECF # 41.)

**5.      AMCO's Opposition To The Instant Motion To Impose Dismissal Sanctions And FNC's Reply Brief In Support Of Its Motion**

After numerous extensions of time, AMCO filed a "Motion In Opposition To FNC's Motion For Sanctions" on May 6, 2005.  (ECF # 49.)  In its opposition, AMCO stated, "To date, the only

portion of [the December 17, 2004 Order] with which AMCO has failed to substantially comply is the production of documents related to AMCO's pending patent application." (*Id.* at 4.) AMCO acknowledged that it had sought and been denied a protective order relating to this information. (*Id.*) Nevertheless, AMCO "maintain[ed] its position that the disclosure of the Patent Materials would be inappropriate in this case" and continued its refusal to provide the information. (*Id.* at 4, 7-8.)

On May 17, 2005, FNC filed a Reply Brief In Support Of Its Motion To Impose Dismissal Sanctions. (ECF # 54.) FNC contended that, in the time since FNC filed its Motion, AMCO had compounded its previous discovery abuses by wilfully defying additional Orders of the Court. (*Id.* at 3.) In particular, FNC asserted that AMCO was in violation of four Court orders, including the December 17, 2004 Order to compel the production of discovery, the March 18, 2005 Order requiring production of the eValu patent application by AMCO's patent counsel, the April 7, 2005 Order compelling deposition testimony, and the April 11, 2005 Order reaffirming that FNC's December 3, 2004 Motion To Compel is meritorious. (*Id.* at 3-7.) As such, FNC maintained that dismissal is the appropriate remedy for AMCO's willful abuses. (*Id.* at 7-12.)

### 6. FNC's Motion For Contempt Sanctions

On May 17, 2005, FNC filed a Motion For Contempt Sanctions against AMCO and Howrey Simon for their willful failure "to disclose AMCO's eValu patent application file to FNC, as ordered by this Court on March 18, 2005." (ECF # 55 at 1.)

AMCO filed a "Motion In Opposition To FNC's Motion For Contempt Sanctions" on June 13, 2005. (ECF # 63.) AMCO stated that AMCO and Howrey Simon agreed to produce all documents requested by FNC relating to the patent application. (*Id.* at 1.) AMCO likewise stated that

8

it was in the process of assembling these documents and related privilege logs and would produce them "as soon as possible." (*Id.* at 1, 3.)

FNC filed a Reply Brief in support of its Motion on June 22, 2005. (ECF # 64.) In the Reply, FNC stated that, although it recently received a production of documents from Howrey Simon, it had not yet determined whether the production was complete. (*Id.* at 1.) FNC likewise received a privilege log of withheld materials, which it contended did not provide a clear explanation of the specific ground for asserting privilege. (*Id.*) Accordingly, FNC requested that the documents be submitted to the Court for an *in camera* inspection. (*Id.* at 2.) FNC further requested that "the Court impose monetary sanctions against AMCO for its intentional obstruction of discovery and disobedience of the Court's Order." (*Id.*)

On June 24, 2005, this Court entered an Order denying the Motion For Contempt Sanctions, "upon the express condition that [the] requested materials are disclosed forthwith as indicated by Plaintiff." (ECF # 69.)

### 7.    The Hearing On The Motion To Impose Dismissal Sanctions

On July 19, 2005, this Court held a hearing on FNC's Motion To Impose Dismissal Sanctions. During the hearing, FNC explained that, since it had originally filed its Motion To Impose Dismissal Sanctions on February 1, 2005, a fair amount of discovery activity had taken place. FNC now asserted that AMCO was in violation of five Court orders, consisting of the "December 17 order compelling [the] production of documents," the "March 18, 2005 order . . . den[ying] AMCO's motion to quash [FNC's] subpoena," the April 7 "order granting the motion to compel," and "two orders [on April 11] denying AMCO's motion to set aside the original order to compel and AMCO's motion for

9

reconsideration of that order." (Tr. at 4.)

FNC also stated that it had received the patent documents from Howrey Simon's file on June 17, 2005, and approximately 1,500 pages of documents from AMCO on July 1, 2005, the last day of discovery. (*Id.* at 5-6.) FNC asserted that, by the time it had received the 1,500 pages of documents, it had already conducted eight depositions. (*Id.* at 6.) FNC further argued that AMCO still had not complied with the Court's orders, because deposition testimony made very clear that there are documents that AMCO knew about, but did not produce to FNC. (*Id.* at 19.) According to FNC, among other items still missing were AMCO's damages calculation and privilege log. (*Id.* at 24.) FNC argued that it suffered prejudice as a result of AMCO's conduct, and the case should be dismissed. (*Id.* at 30.)

In response, AMCO stated that, although it had "endeavored to locate as many documents as possible that are responsive to [FNC's] discovery requests," the search was impacted by activity over the past five years, which included the company being "spun off from its parent company" and "mov[ing] offices a couple of times." (*Id.* at 34.) With respect to FNC's assertion that deposition testimony made clear that additional documents were not produced, AMCO stated, "Sometimes with witnesses when you say give me what you've got, they give you what they've got and then sort of don't realize the scope of what you're actually asking for." (*Id.* at 36.) In sum, AMCO argued that it had substantially complied with discovery, and that FNC had suffered no prejudice.

At the close of the hearing, the Court found that AMCO did not timely produce information requested by FNC, and that FNC had suffered prejudice as a result of AMCO's conduct. (*Id.* at 52.) The Court reserved ruling on the appropriate sanction, however, until it received additional briefing on

10

the issue from the lawyers for both sides.  (*Id.*)

### 8.      Post-Hearing Briefs On The Motion To Impose Dismissal Sanctions

On July 29, 2005, FNC filed a Supplemental Memorandum In Support Of The Motion For

Sanctions and Proposed Findings Of Fact And Conclusions Of Law.  (ECF # 81 and # 82.)  In its

Supplemental Memorandum, FNC stated that numerous discovery deficiencies remained as of the

hearing date.  (ECF # 81 at 2.)[2]  FNC acknowledged that, after the hearing, AMCO produced a small

set of additional documents, a privilege log, and a verification on the afternoon of July 19, 2005.  (*Id.*,

n.1.)  Nevertheless, FNC stated that "these documents did not cure most of the . . . remaining

deficiencies" and "the documents came far too late to ameliorate the prejudice already visited upon

FNC."  (*Id.*, n.1.)

On August 5, 2005, AMCO filed a Response To FNC's Proposed Findings Of Fact And

Conclusions Of Law.  (ECF # 84.)  AMCO argued that the Court should consider only AMCO's

conduct relating to the December 17, 2004 Order, and not its subsequent conduct, because the

December 17 Order was the only order on which FNC based its Motion To Impose Dismissal

---

[2] FNC argued that:

> As of the July 19, 2005 sanctions hearing[,] AMCO had still failed to provide: (a) additional agreements between AMCO and FNC; (b) communications between AMCO and Bank of America regarding the development of, and rights in, eValu; (c) additional agreements between AMCO and Bank of America; (d) the eValu computer code; (e) emails and other documents related to the interface project and AMCO's interactions with FNC; (f) the technical documents in Ms. Nallasamy's files; (g) the provisional patent application for eValu; (h) the calculation behind AMCO's stated damages of $10.75 million; (i) confidentiality agreements executed by AMCO's employees; (j) unredacted versions of documents previously produced with improper redactions; (k) a privilege log; (l) written responses to FNC's second set of requests for production; and (m) verifications of AMCO's interrogatory responses.

(ECF # 81, n.1.)

11

Sanctions.  (*Id.* at 1.)  AMCO asserted, *inter alia*, that, because the December 17 Order was

improperly granted, the Court should deny the Motion To Impose Dismissal Sanctions.  (*Id.* at 1.)

AMCO further asserted that its discovery conduct was attributable to unavoidable delays such

as its counsel's wedding and honeymoon, and that the responsive documents were difficult to locate

because "[s]ince 2002, AMCO has moved locations twice and experienced a great deal of employee

turnover."  (*Id*. at 5.)  Although it admitted that its discovery conduct "has caused some problems,"

AMCO urged that its conduct had "not been willful" and thus FNC's Motion should be denied.  (*Id*.)

On August 15, 2005, FNC filed a Reply Brief in support of its Motion.  (ECF # 85.)  FNC

argued that the Court is required to consider all of the facts and circumstances of the case – not just the

December 17, 2004 Order.  (*Id*. at 2.)  FNC asserted that the "facts uncovered in the period between

the filing of FNC's motion for sanctions and the evidentiary hearing are highly relevant and must be

considered by the Court."  (*Id*. at 3.)  In light of these facts, as well as those set forth in the original

Motion, FNC maintained that this action should be dismissed.

### 9.    The Discovery Period

After AMCO filed this case in June 2004, the Court ordered a discovery cutoff date of January

31, 2005.  (ECF # 9.)  At a status conference on January 7, 2005, after noting that AMCO's counsel

had suffered from physical problems, the Court extended the discovery cutoff date until April 1, 2005.

(ECF # 20.)  At a status conference on April 7, 2005, the Court again agreed to extend the discovery

cutoff date until July 1, 2005, but noted that no further extensions of time would be granted.  (ECF #

37.)  On July 1, 2005, AMCO filed a Motion To Extend Discovery, asking for a new discovery cutoff

date of August 31, 2005.  (ECF # 66.)  FNC opposed the extension (ECF # 74), and the Court

12

denied the Motion (ECF # 77).

## II. DISCUSSION

In evaluating whether this case should be dismissed under Rule 37(b) or Rule 41(b) of the Federal Rules of Civil Procedure, the Court considers the following four factors: (1) whether AMCO's failure to cooperate in discovery is due to willfulness, bad faith, or fault; (2) whether FNC has been prejudiced by AMCO's conduct; (3) whether AMCO has been warned that its failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions have been imposed or considered. *See Moses v. Sterling Commerce (Am.), Inc.*, 122 Fed. Appx. 177, 182 (6th Cir. 2005); *Southern Wabash Communications, Ltd. v. Union County Broad. Co., Inc.*, 69 Fed. Appx. 285, 290 (6th Cir. 2003). The Court examines each of these factors in turn.

### A. WILLFULNESS, BAD FAITH, OR FAULT

AMCO bears the burden of demonstrating that its failure to comply with its discovery obligations was due to inability, not willfulness or bad faith. *See Southern Wabash Communications, Ltd.*, 69 Fed. Appx. at 290. As set forth below, AMCO fails to meet that burden.

#### 1. Patent Application Materials

AMCO's behavior with respect to the patent application materials alone demonstrates its willful noncompliance with discovery and this Court's Orders. Despite acknowledging FNC's requests for patent application materials and this Court's numerous Orders requiring the production of the same, AMCO chose not to produce the patent application information, on the ground that it simply disagreed with the Court's Orders.

AMCO's intransigence is reflected in various briefs it filed with this Court. For example, in its

13

"Motion To Set Aside Judgement [sic]" filed on March 18, 2005, AMCO acknowledged its refusal to fully comply with the Court's December 17, 2004 Order compelling the discovery of, among other information, patent application materials.  (ECF # 35 at 2.)  In particular, AMCO stated that it "made a good faith effort to comply completely with this Court's Order compelling discovery, *except as the material related to [its Patent] Application*."  (*Id.* (emphasis added).)

In its "Motion In Opposition To FNC's Motion For Sanctions" filed on May 6, 2005,  AMCO elaborated on its refusal to comply, stating:

> AMCO acknowledges that to date, it has not provided FNC with information and documents related to the Patent Materials.  AMCO respectfully disagrees with the Court's rulings with regard to the discovery of these materials.  AMCO intends to pursue every avenue to appeal the Court's rulings on this issue and regretfully cannot yet produce information and documents related to the Patent Materials.  As the saying goes, "you cannot un-ring a bell."  AMCO has alleged that FNC has misappropriated trade secrets in order to develop a product that would compete with its eValu product.
>
> AMCO fears disclosure of the Patent Materials would be abused by FNC and that any such abuse would be almost impossible to prove.  In consideration of the allegations contained in AMCO's Complaint regarding this issue, AMCO wishes to further appeal this issue before producing this incredibly sensitive information.

(ECF # 49 at 7-8.)  AMCO also stated that it had "to the best of its ability, responded to FNC's discovery requests *that do not concern the Patent Materials*."  (*Id.* at 7 (emphasis added).)  At the time that AMCO filed its "Motion In Opposition To FNC's Motion For Sanctions," the Court had already issued several Orders requiring the production of patent application materials, including the December 17, 2004 Order granting FNC's Motion To Compel (ECF # 18), the March 18, 2005 Order denying AMCO's Motion To Quash (ECF # 33), the April 7, 2005 Order granting FNC's Second Motion To Compel (ECF # 41), and the April 11, 2005 Orders denying AMCO's Motion For

14

Reconsideration and Motion To Set Aside Judgment (ECF # 39, ECF # 40).[3]

Indeed, despite these Orders, AMCO exhibited a total unwillingness to comply until May

2005, when it proposed disclosure according to its own limited terms.  More specifically, on May 11,

2005, AMCO filed a Motion For A Protective Order Or To Certify Appeal stating that, if the Court

would enter an order prohibiting the dissemination of the patent application to Neil Olson, FNC's Chief

Legal Officer, then it would produce the patent application to FNC's trial counsel.  (ECF # 51 at 4-5.)

On June 24, 2005, the Court denied AMCO's Motion, again ordering AMCO to produce the

information.  (ECF # 68.)

Due to AMCO's dilatory and contumacious conduct, FNC did not receive any of the patent

application materials until June 17, 2005, when it obtained subpoenaed documents from Howery

Simon.  (Tr. at 5.)  At that point, approximately two weeks remained in the discovery period.  With

respect to this issue, FNC has explained, "While AMCO ultimately relented and allowed its patent

counsel to produce documents shortly before the close of the discovery period, AMCO did not

produce any patent documents from its own files until *after* the July 19 sanctions hearing."  (ECF # 85

at 8.)

Throughout the discovery period, AMCO consistently refused to produce the patent

application information because it disagreed with the Court's Orders – not because it suffered from an

---

[3]  AMCO's argument that the Court should consider only its conduct relating to the December 17, 2004
Order, and not its subsequent conduct, is unpersuasive.  (ECF # 84 at 1.)  This is not a case of delayed production,
but one of systematic discovery abuse.  The totality of AMCO's conduct exposes it to sanctions, and the Court
denies AMCO's request to view such conduct in insolation.

Similarly, the Court finds AMCO's argument regarding the technical propriety of the December 17 Order to
be without merit.  (*Id.* at 1.)  As the Court made clear in denying AMCO's Motion To Set Aside, even considering all
of AMCO's arguments, FNC's Motion To Compel is meritorious, and the December 17 Order is valid.  (ECF # 40.)

inability to comply.  Rather, AMCO made the deliberate decision not comply, because it believed that the Court's rulings on this issue were in error.  It was not until the hearing on FNC's Motion To Impose Dismissal Sanctions in July 2005 that AMCO offered any other explanation for its behavior.  During that hearing, AMCO's counsel made a reference to seeking the assistance of the former in-house counsel of AMCO's parent company in order to locate responsive patent documents.  (Tr. at 39-40.) There is nothing in the record to suggest, however, that having to seek the assistance of the former in-house counsel hindered AMCO's ability to produce the documents in a timely fashion.  To the contrary, the record reflects that AMCO had no regard for FNC's persistent requests and Orders of the Court concerning the patent application information.  For these reasons, the Court finds that AMCO's failure to cooperate was willful.

**2.      Deposition Testimony Regarding The Existence Of Additional Documents**

The testimony of deposition witnesses in this case further supports this Court's determination that AMCO willfully failed to comply with discovery and this Court's Orders.  According to FNC, AMCO's deposition witnesses have admitted that documents requested by FNC are within AMCO's possession, but were never produced.  (ECF # 81 at 6.)  In its Supplemental Memorandum In Support Of The Motion For Sanctions filed on July 29, 2005, FNC provided the Court with the following examples:

- Pat Moore, AMCO's first Rule 30(b)(6) designee, testified on February 11, 2005 that AMCO had in its possession highly relevant communications and agreements that had never been produced.  AMCO's counsel agreed in subsequent communications that these documents existed, and promised to produce them.

- At the continuation of his deposition nearly three months later, Mr. Moore testified that he made virtually no efforts to locate the documents he previously identified as outstanding.

16

AMCO's counsel indicated again on the record that the documents in question "are available," and again promised he would produce them. To date, these documents remain in AMCO's control but have not been produced.

- On May 9, 2005, more than seven months after FNC's initial request and with all five discovery Orders on the docket, AMCO's second Rule 30(b)(6) designee, Tim McParland, identified additional key documents that existed but had not been produced. Mr. Parland indicated that he had collected all of these documents and provided them to AMCO's counsel for purposes of this litigation "within the past six months" prior to his deposition. AMCO's counsel, however, admitted on the record that the documents had not been produced but promised to produce them. AMCO ultimately did produce some of these documents, but only on July 1, 2005, the day discovery closed.

- On June 30, 2005, Jothi Nallasamy, another AMCO employee, also identified responsive documents in AMCO's possession that should have been produced nine months earlier. She testified that AMCO had in its possession a hard copy file containing her notes and technical documents concerning the joint project between AMCO and FNC that AMCO claims to have been the setting for FNC's alleged misappropriation. Although she was identified by AMCO as the person principally responsible for the technical aspects of the project, Ms. Nallasamy testified that she was never asked to turn over this file to AMCO's counsel for purposes of this litigation. In addition, Ms. Nallasamy confirmed that she could print in hard copy the computer code behind the eValu product – another item that FNC had specifically requested nine months earlier – yet she was never asked to, and did not, perform this task. The documents identified by Ms. Nallasamy were not produced by AMCO prior to the July 1, 2005 discovery cut-off or the July 19, 2005 sanctions hearing.

- Finally, AMCO's patent counsel testified at his deposition on July 1, 2005 that additional patent documents existed that were not included in the June 17 production of the patent file. Specifically, Mr. Bell testified that AMCO had filed an earlier provisional patent application for eValu, and that a different law firm had been engaged to accomplish that task. During the sanctions hearing on July 19, 2005, AMCO's counsel confirmed that additional patent documents existed but had not been produced despite two court orders that had been issued several months prior.

(*Id*. at 6-8 (internal citations omitted).)

AMCO has admitted that its counsel was not "personally aware of" the existence of some

responsive documents until "certain people were deposed." (Tr. at 35.) However, AMCO states that,

"Sometimes with witnesses when you say give me what you've got, they give you what they've got and

17

then sort of don't realize the scope of what you're actually asking for."  (*Id.* at 36.)  AMCO provided

an example of such an instance in its Response To FNC's Proposed Findings Of Fact And Conclusions

Of Law, stating:

> AMCO's counsel asked Ms. Nallasamy to provide documents related to AMCO's
> relationship with FNC.  Ms. Nallasamy's [sic] testified that she had a file containing certain
> notes and technical documents.  AMCO's counsel was not aware that she had this specific
> file and it was not provided to him by Ms. Nallasamy.  This was not obstructive behavior
> by AMCO, but merely an oversight on the part of Ms. Nallasamy, something that happens
> with clients on occasion.

(ECF # 84 at 14.)

AMCO's counsel had an affirmative duty to make a reasonable inquiry into AMCO's

responses to FNC's discovery requests.  It is not sufficient to state that its counsel was unaware of the

existence of documents, or that its witnesses did not understand the request for information.  The record

in this case reflects that, not only did AMCO fail conduct an adequate search for documents, but its

counsel's discovery of the existence of documents did not always result in production.  This is true not

only in the instance of Ms. Nallasamy's technical documents, but also, for example, with respect to

documents identified in Mr. Moore's deposition.[4]

AMCO repeatedly broke its promises to produce information to FNC and consistently

disobeyed this Court's Orders regarding the production of information.  This systematic behavior

suggests such gross negligence as to rise to the level of intentional misconduct or bad faith, and thus

supports this Court's finding of willfulness.

## B. PREJUDICE

---

[4] In its Reply Brief in support of its Motion For Dismissal Sanctions filed on August 15, 2005, FNC stated
that it had still not received documents specifically identified by Pat Moore in his deposition.  (ECF # 85 at 9.)

AMCO's conduct impaired FNC's ability to prepare its defense in this case.  For instance, AMCO's failure to produce documents, and its belated production of documents, including approximately 1,500 pages of documents that it produced on the last day of discovery, impaired FNC's ability to identify witnesses with relevant knowledge and to use those documents during the depositions of the witnesses that it was able to identify.  AMCO's conduct further required FNC to expend considerable time, money, and effort in seeking the cooperation to which it was legally entitled.  *See Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 368 (6th Cir. 1997).  Accordingly, AMCO's conduct has caused FNC to suffer prejudice.

## C.  NOTICE OF DISMISSAL

The record reflects that FNC warned AMCO more than once that its continued misconduct could lead to dismissal.  *See* (ECF # 21, Ex. B (December 21, 2004 letter to AMCO's counsel warning that AMCO's continued failure to comply would result in FNC seeking "further relief from the Court, including, but not limited to, orders for contempt and/or sanctions to include dismissal of AMCO's claims"), Ex. F (January 6, 2005 letter to AMCO's counsel stating that, if AMCO does not cure the discovery deficiencies, FNC "will have no choice but to seek additional relief from the Court, including the dismissal of AMCO's Complaint").)  Furthermore, FNC's Motion, which specifically requested dismissal as a sanction and on which this Court held a hearing, constitutes sufficient notice to AMCO that its failure to cooperate could lead to dismissal.  *See Southern Wabash Communications, Ltd.*, 69 Fed. Appx. at 291 (finding that motion specifically requesting dismissal as possible sanction constitutes sufficient notice); *see also United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002) (holding that motion to strike provided some notice); *Harmon*, 110 F.3d at 368 (finding that

19

defendant's motion to dismiss and plaintiff's request for additional time to respond demonstrated that plaintiff received notice of possible dismissal).  Therefore, the Court finds that AMCO has received sufficient warning that its failure to cooperate could lead to dismissal.

### D.  IMPOSITION OR CONSIDERATION OF LESS DRASTIC SANCTIONS

Although dismissal is the ultimate sanction that should not be granted lightly, *see Southern Wabash Communications, Ltd.*, 69 Fed. Appx. at 291, the Court finds it warranted in this case. AMCO continually refused to comply with its discovery obligations, even in the face of multiple Court Orders requiring its cooperation and imposing monetary sanctions.  Thus, lesser sanctions did not result in AMCO's cooperation in discovery.

Even if the Court agreed to once again extend the discovery cutoff date in an attempt to provide FNC with a fair opportunity to prepare its case, such a decision would cause additional prejudice to FNC, a party who has already spent considerable time and money attempting to prepare its defense despite AMCO's misconduct.  Furthermore, numerous discovery deficiencies remain, and nothing exists in the record to suggest that AMCO would now be willing to comply with its obligations.[5]  Thus, this Court has no reason to believe that a lesser sanction would protect the integrity of pretrial procedures or ameliorate the prejudice already visited upon FNC.

### E.  SUMMARY

Although this Court's preference would be to resolve AMCO's claims on the merits, AMCO's conduct since the inception of this case leaves the Court with no choice but to dismiss the Complaint.

---

[5]  Indeed, the Court conducted a status conference on October 20, 2005 to determine if the status of discovery had changed since AMCO's July 19, 2005 production, and the parties indicated that no progress had been made.

AMCO came to this Court voluntarily, as a plaintiff allegedly seeking millions of dollars in damages, yet it refused comply with its discovery obligations and this Court's Orders.  A plaintiff "has no right to maintain a civil action in which [it] refuses to disclose relevant documents."  *See Bullard v. Roadway Express*, 3 Fed. Appx. 418, 420-21 (6th Cir. 2001).

AMCO's conduct frustrated the very purpose of discovery, which is to narrow the issues, obtain evidence for use at trial, and secure information about the existence of evidence.  AMCO trickled out information as it deemed fit, regardless of its obligations under the Federal Rules and this Court's Orders, by, for example, waiting until the end of the discovery period to produce information that should have been provided long before.  Because AMCO's failure to cooperate in discovery is due to willfulness, FNC has been prejudiced by AMCO's conduct, AMCO has been warned that its failure to cooperate could lead to dismissal, and less drastic sanctions have been imposed, the Court GRANTS FNC's Motion and hereby DISMISSES AMCO's Complaint.

### III.  CONCLUSION

Based upon the foregoing, FNC's Motion To Impose Dismissal Sanctions Against AMCO is GRANTED (ECF # 21), and AMCO's Complaint against FNC is DISMISSED.

Although FNC's Counterclaims against AMCO remain pending, it is unclear whether FNC's claims reach the jurisdictional amount threshold such that they should remain in this Court based on diversity of citizenship.  Absent subject matter jurisdiction based upon diversity of citizenship or any other independent basis of federal subject matter jurisdiction, this Court is not inclined to maintain FNC's claims in this Court.  The Court will conduct a status conference to address this issue on Friday, December 16, 2005 at 11:00 a.m., if FNC's claims are not dismissed voluntarily prior to that time.

IT IS SO ORDERED.

                                 */s/Donald C. Nugent*
                                 DONALD C. NUGENT
                                 United States District Judge

DATED:   November 16, 2005